## A00A1778. LANE v. THE STATE.
(545 SE2d 665)

ANDREWS, Presiding Judge.

Boris Lane appeals from the judgment entered after a jury found him guilty of robbery, bringing several enumerations of error. For the reasons which follow, we affirm.

1. In his first enumeration of error, Lane argues the evidence was insufficient to support the verdict. Specifically, he claims there was no evidence that he participated in the robbery. We disagree.

Viewed in the light most favorable to the verdict, the evidence at trial was as follows.

The victim in this case, Holland, testified that he stopped at a convenience store on his way home from work at a little after 2:00 a.m. As he was walking into the store, he saw four people, three men and a woman, up on a hill in back of the store. When Holland walked up to pay for his drink, one of the men, identified at trial as defendant Lane, approached him and asked if he wanted to buy a stereo. Holland said he did not want the stereo, and the man left the store.

As Holland was paying for his drink, he saw another man, identified at trial as co-defendant Pines, looking at him through the window. When Holland left the store, Pines and Lane were standing together outside the door. Lane then asked Holland if he had any rolling papers, and Holland replied that he did not smoke dope. Pines asked Holland for a cigarette, and Holland walked over to his truck to get his cigarettes.

Both men followed Holland to his truck, and as Holland leaned in to get the cigarettes, one of the men hit him in the face. Holland said he was pushed facedown onto the seat of the truck and while he was being hit someone took his wallet. He testified: "As I was getting hit, there was hands hitting me and hands all over my back side." Holland said he could not see which one hit him, but Pines was in front of Lane as they walked around the truck. After taking the wallet, Pines and Lane ran off together.

Holland was bleeding and went back into the store and asked the clerk if he knew the men. The clerk said no and also refused to call 911 because "he didn't see a thing." Holland called 911 from a pay phone and when police arrived gave them a description of the two men.

One of the investigating officers testified that an ambulance came and Holland was treated at the scene. After giving officers a description of the two men who attacked him, Holland left to go home. The officers went back on patrol and after going one or two miles saw a car coming down the street with no headlights on. After stopping the car, the officers walked over and saw that the two men in the backseat, one of whom was lying down, matched the descrip-

tion Holland gave of his assailants.

The officers put the men in the back of the police car and called Holland to meet them at the convenience store where the crime occurred. Holland identified two of the three men, Pines and Lane, as the men who robbed him.

The evidence was sufficient to support the verdict.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the [defendant] no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) [(1991)]; *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381) [(1994)].

*Dolphus v. State*, 218 Ga. App. 565, 566 (462 SE2d 453) (1995).

2. Next, Lane argues the trial court erred in denying him the right to open and conclude argument to the jury. Lane claims he did not introduce any evidence and, therefore, should have been allowed to open and conclude argument.

OCGA § 17-8-71 provides that the prosecuting attorney shall open and conclude argument to the jury unless the defendant introduces no evidence; in which case, defense counsel shall open and conclude argument after the evidence on the part of the State is closed. The State argued that defendants had presented evidence when defense counsel had Officer Robinson read a question and his answer from the transcript of a preliminary hearing. Counsel handed the officer a transcript from the hearing and asked him to read the following question and answer: "[Q:] What description did you give of Mr. Pines? [A:] I really can't recall at this time." Also, during that same cross-examination, Pines's counsel asked Officer Robinson to read the following statement above his signature line in the police report: "The undersigned being duly sworn upon his or her oath discloses and states that the foregoing is true, correct, complete and legible, to the best of his or her knowledge and belief."

The Supreme Court of Georgia recently addressed this issue in *Smith v. State*, 272 Ga. 874, 878 (536 SE2d 514) (2000). *Smith* established the following standards to determine whether a defendant has lost the right to open and close:

> (1) If, under the guise of cross-examination, a defendant reads from the portions of a prior written statement of a witness that are not related to impeaching the witness, the

defendant has effectively introduced evidence to the jury that should have been formally offered into evidence and the defendant therefore loses the right to open and close final arguments; (2) if a defendant reads only the portions of the prior written statement of a witness that are relevant to impeaching the witness, the defendant has not introduced evidence and does not lose the right to open and close; and (3) if a defendant, in impeaching a witness with a prior inconsistent statement, voluntarily introduces the statement into evidence in order to make it a part of the record, the defendant has introduced evidence and has lost the right to open and close final arguments.

The facts in this case fall under Section (3) above. Defense counsel had the witness read the statement into evidence, and it was made part of the record. See also *Aldridge v. State*, 237 Ga. App. 209, 214-215 (515 SE2d 397) (1999) (defense counsel had witness read highlighted portions of arrest report into evidence and thereby lost opportunity to open and close). Accordingly, because the defense introduced evidence into the record, the trial court did not err in denying them the right to open and close. *Smith*, supra; *Aldridge*, supra.

3. Lane also claims the trial court erred in reading to the jury the definition of "aiding and abetting." During deliberations, the jury sent out a note requesting the legal definition of "aiding and abetting." In response, the court recharged the jury on "party to a crime" and read the following definition from Black's Law Dictionary: "Now, I want to give you the Black's Law Dictionary definition of aid and abet. That is[,] in part, 'Help, assist or facilitate the commission of a crime, promote the accomplishment thereof, help in advancing or bringing it about.' " The trial court also stated that it would read the jury "what is not aiding and abetting." The court then recharged on mere presence and mere association.

Lane argues on appeal that "by reading a definition to the jury that was not contemplated by the legislature," the court permitted Lane to be convicted of a crime in a manner not authorized by Georgia law. He claims the jury was more likely to pay particular attention to the recharge and rely more heavily on those instructions than on the original charge.

Even assuming this to be true, there was no harm because the court also recharged on mere presence and mere association. Further, it is not error to define a term when the jury requests it. *Green v. State*, 240 Ga. App. 377, 380 (523 SE2d 581) (1999). Accord *Silvers v. State*, 245 Ga. App. 486 (538 SE2d 135) (2000). "It is the court's duty to instruct on any point the jury requests and to do it in plain,

clear language." *Green*, supra at 380. Aiding and abetting was not defined in the charge, and the court did not abuse its discretion in providing the definition. Id.

4. Next, Lane claims the trial court erred in denying his motion to suppress because the arrest was without probable cause. Lane does not argue that the initial stop of the car was improper, nor does he argue there was not probable cause to arrest after the victim identified him and Pines. Rather, Lane argues that when he was detained in the back of the police car waiting for the victim to come and identify him, he was under arrest and at that time, there was not probable cause to arrest him. We disagree.

It took approximately 20 minutes for Holland to come back to the scene of the crime and identify Pines and Lane. During that time, Pines and Lane were put in the backseat of the patrol car. They were not handcuffed, but they were not able to leave the car.

> Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. Under the first tier, a police officer may approach an individual and ask a few questions without triggering Fourth Amendment scrutiny. The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. The third tier is an actual or de facto arrest which requires probable cause and involves restraint of one's liberty.

(Citations and punctuation omitted.) *Lewis v. State*, 233 Ga. App. 560 (504 SE2d 732) (1998).

Lane claims that when officers placed him in the back of the police car, this was not a brief detention but an arrest and probable cause was needed. Lane cites *Radowick v. State*, 145 Ga. App. 231 (244 SE2d 346) (1978), in support of his contention that the 20-minute detention exceeded a brief stop. But, in *Radowick*, this Court concluded that where a detention exceeded 40 minutes, it was not a "brief" stop. Id. at 238-239.

Likewise, *State v. Henderson*, 215 Ga. App. 215, 217 (450 SE2d 288) (1994), is not on point. In *Henderson*, the stop of the car was not

justified. But, the court acknowledged that a *Terry* stop involves a limited detention in order to identify the suspect, frisk him if necessary, and conduct limited questioning. Id. at 217. Here, the officers detained Pines and Lane for a limited time in order for the victim to identify them.

Further, 20 minutes has been held to constitute a "brief" seizure. *Thomas v. Holt,* 221 Ga. App. 345, 349 (471 SE2d 300) (1996). *Thomas* also noted that "[i]n *United States v. Sharpe,* [470 U. S. 675 (105 SC 1568, 84 LE2d 605) (1985),] the Supreme Court determined that a 20-minute detention of an automobile driver did not exceed the bounds of an investigative stop." (Punctuation omitted.)

Accordingly, the brief detention of Pines and Lane for purposes of identification was not an arrest but an authorized *Terry* stop. The trial court did not err in denying Lane's motion to suppress.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED FEBRUARY 19, 2001 —
RECONSIDERATION DENIED MARCH 7, 2001 —

*Jacqueline J. Herring,* for appellant.
*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney,* for appellee.