## A02A2474. THE STATE v. CATES.
### (574 SE2d 868) ·

ANDREWS, Presiding Judge.

The State appeals from the trial court's order granting Christopher Cates's motion to suppress evidence of cocaine seized after Cates consented to a search of his car. Because this was a first-tier police-citizen encounter involving no coercion or detention, we conclude the consent to search was valid and reverse.

" 'When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.' " *Allenbrand v. State*, 217 Ga. App. 609 (458 SE2d 382) (1995). But, where the evidence is uncontroverted, as it is in this case, and no question about the credibility of witnesses is presented, the trial court's application of law to the undisputed facts is subject to de novo appellate review. *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994).

At the motion to suppress hearing, the only testimony was that of the arresting officer. He stated that he was patrolling in a known drug area when he saw some men getting out of a car at a gas station/convenience store. The officer recognized two of the men from previous encounters and decided to stop.

The officer pulled into the gas station and got out of his car. Three of the men walked into the convenience store, leaving Cates, the driver, alone in the car. The officer asked Cates if he knew the men who had been in his car, and Cates replied no, that he had just met them through a friend and was giving them a ride. The officer then asked Cates about the car he was driving because it had a "drive-out" tag instead of a license plate. Cates was able to show that he owned the car.

As the three men came out of the store, the officer asked each of them some general questions and they told him conflicting stories about where Cates picked them up and where they had been. As a

result, the officer asked all four men if he could search their persons. They all gave him permission to search.

The officer found nothing in their pockets, but during the search, one of the men told the officer that he needed to "check the vehicle real good." The officer asked Cates for permission to search the car, and Cates consented. Under the right rear floorboard, the officer found a baggie containing crack cocaine.

After his arrest, Cates filed a motion to suppress the cocaine. The trial court granted the motion, finding that before the officer could ask for consent to search the car, he must have some articulable suspicion that drugs were in the car. This appeal followed.

The State argues that the officer's encounter with the four men was a first-level police-citizen encounter which carries with it no Fourth Amendment protection. We agree.

> There are three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave.

(Citation and punctuation omitted.) *McClain v. State*, 226 Ga. App. 714, 716 (487 SE2d 471) (1997). And, "[i]t is well established that an officer's approach to a stopped vehicle and inquiry into the situation is not a stop or seizure but rather clearly falls within the realm of the first type of police-citizen encounter." (Punctuation omitted.) *Stokes v. State*, 238 Ga. App. 230, 232 (518 SE2d 447) (1999).

"Under such 'first tier' encounter, even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search — as long as the police do not convey a message that compliance with their requests is required." *Gary v. State*, 244 Ga. App. 535, 536 (536 SE2d 192) (2000). These requests to search made during the course of a first-level police-citizen encounter do not transform such an encounter into a second-tier *Terry* stop. An officer's request to search is not a seizure and does not require articulable suspicion. *Stokes*, supra at 232.

In this case, there is nothing in the record showing that the

officer threatened or coerced Cates, or that he restrained Cates in any way. See *Stokes*, supra at 233. These actions of the officer, approaching the parked car, asking to see proof of car ownership, and asking about possible criminal or suspicious activity, clearly fall within the realm of the first type of police-citizen encounter and do not amount to a stop. *McClain*, supra at 717.

Accordingly, because the officer's communications with Cates were within the realm of the first tier of police-citizen encounters and were not the equivalent of a stop, they did not need to be supported by any articulable suspicion of criminal activity. Consequently, Cates's consent to the search of his car was valid and not tainted by an illegal stop. Therefore, the trial court erred in granting Cates's motion to suppress. *Stokes*, supra; *Voyles v. State*, 237 Ga. App. 886, 887 (517 SE2d 113) (1999). See also *State v. Ledford*, 247 Ga. App. 412, 414 (543 SE2d 107) (2000) (no evidence that agents' request to search the women's car was a *Terry*-type detention that required reasonable, articulable suspicion).

*Judgment reversed. Mikell, J., concurs. Phipps, J., concurs in the judgment only.*

DECIDED DECEMBER 3, 2002.

*Robert E. Keller, District Attorney, Bonnie K. Smith, Assistant District Attorney*, for appellant.

*Steven E. Lister*, for appellee.

