## A06A1208. THE STATE v. CAULEY.
(638 SE2d 351)

RUFFIN, Chief Judge.

The State charged Melvin Cauley with possessing cocaine with intent to distribute.[1] Cauley moved to suppress the cocaine that his parole officer found while searching Cauley's automobile, arguing that the search was illegal. The trial court denied the motion, and the

---

[2] Although not originally contained in the record, it has been made a supplemental record by order of this Court.

[1] The indictment also charged Cauley with trafficking in cocaine, but that charge was dismissed by the State prior to trial.

jury found Cauley guilty. Thereafter, the court granted Cauley's motion for new trial, specifically setting aside its previous order denying the motion to suppress and granting the suppression motion. The State appeals, contending that the trial court erred in granting Cauley's motions to suppress the evidence and for new trial. For reasons that follow, we reverse.

> When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.[2]

So viewed, the evidence shows that Timothy Gray, a narcotics investigator, received a telephone call from an informant advising that he had observed a black bag containing a "large amount of drugs" in a gray Mitsubishi Montero. Gray testified that the informant — who had a pending charge at the time of the call — had been "working for" Gray for the previous six or seven months, during which time he provided corroborated information that led to numerous drug purchases.

The informant stated that the vehicle was being detailed at a specific automobile detail shop, and identified the driver as "Rusty." Gray arrived at the detail shop approximately ten minutes after he received the telephone call; he observed a gray Mitsubishi Montero being detailed and therefore set up surveillance. Approximately 15 to 20 minutes later, the police observed Cauley drive away in the Montero.[3] Investigator Gray and several officers in marked police cars followed Cauley. According to Gray, although the police hoped to stop Cauley for a traffic violation, Cauley followed all of the rules of the road and gave them "no probable cause to make a stop."

After Cauley parked and exited the vehicle at an apartment complex, Investigator Gray approached, identified himself, and asked to see Cauley's driver's license and proof of insurance. Cauley complied with Gray's request. Investigator Gray then advised Cauley that he had received a complaint that there were drugs in Cauley's vehicle, and requested permission to search it. Cauley denied that there were drugs or weapons in the vehicle, but neither consented nor objected to Gray's request to search the Montero. While Gray was speaking with Cauley, at least three other police officers arrived on the scene in marked police vehicles.

---

[2] *Solis v. State*, 268 Ga. App. 493, 494 (1) (602 SE2d 166) (2004).

[3] Investigator Gray did not know Cauley at the time.

Another officer approached Cauley and asked whether he was on parole. Cauley confirmed that he was on parole, and Lieutenant Lance Watson telephoned Tom Lord, Cauley's parole officer. Watson advised Lord that they were with Cauley and that they had received information that Cauley was holding narcotics in his vehicle. Lord confirmed Cauley's parole status, explained that Cauley "had a search clause . . . attached to his parole," and said that he "would be [en] route to investigate further." Lord and two other parole officers arrived on the scene approximately 20 to 30 minutes later.

Lord then advised Cauley that parole staff were entitled to search his vehicle as a condition of his parole. Lord initiated the search, aided by the two other parole officers, and the police then joined in the search.[4] Inside the vehicle, the officers found crack cocaine and a key chain containing a slab of cocaine in a black leather bag; a black leather case containing four razor blades; a penny weight scale; a hundred gram weight scale; a digital scale; latex gloves; a measuring cup; a box of baking soda; inositol powder;[5] and 150 to 200 plastic bags. Cauley was placed under arrest at the scene.

Cauley moved to suppress the evidence, but the trial court denied the motion. Following his guilty verdict, Cauley moved for a new trial. The trial court then granted the motion to suppress, finding that the police impermissibly used the parole officer as a "shield" or "stalking horse" to implement an otherwise unjustified vehicle search, in circumvention of Cauley's Fourth Amendment rights, and thus Cauley was entitled to a new trial.

1. In its sole enumeration of error, the State contends that the trial court erred by concluding that the "stalking horse doctrine" required suppression of the evidence.[6] In its order, the trial court stated that "[t]he police may not use a parole officer as a constitutional 'shield' to circumvent a parolee's basic rights, despite his/her status on parole and the diminished rights so held," citing *United States v. Hallman*.[7] The court also cited *Smith v. Rhay*[8] for the principle that "[i]t is illegal for law enforcement to conduct an investigation, reach a point where probable cause cannot be developed, and then ask a parole officer to use his/her authority to complete

---

[4] Although Parole Officer Lord testified that he requested police assistance during the search, Investigator Gray testified that the parole officer accepted Gray's offer to assist in the search.

[5] According to Investigator Gray, inositol powder is added to cocaine to increase volume.

[6] The "stalking horse doctrine" precludes the use of a parole or probation officer to effectuate an otherwise illegal search. See *United States v. Hallman*, 365 F2d 289, 292 (3rd Cir. 1966).

[7] Id.

[8] 419 F2d 160 (9th Cir. 1970).

the investigation, without first obtaining a warrant."[9]

The State contends that the "stalking horse" defense was invalidated by the Supreme Court in *United States v. Knights*.[10] In *Knights*, the Court held that a warrantless search of a probationer, "supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment."[11] The Court rejected Knights' argument that the Fourth Amendment limited searches made pursuant to a probation condition to those with a "probationary" purpose — for example, to monitor the probationer.[12] Because a search condition significantly diminishes a probationer's reasonable expectation of privacy, when an officer has

> reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.[13]

Recently, the Supreme Court also affirmed a California decision upholding the validity of a suspicionless search of a parolee conducted by a police officer pursuant to a condition of parole.[14] Comparing the continuum of state-imposed punishments, the Court stated that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment."[15] Because the search terms of the parole condition were clearly expressed to the parolee, he "did not have an expectation of privacy that society would recognize as legitimate."[16] The Court further concluded that, because California law prohibits " 'arbitrary, capricious or harassing' " searches, allowing suspicionless searches of parolees does not give officers "unbridled discretion to conduct searches."[17]

In Georgia, a search

---

[9] We note that neither Cauley in his brief, nor the trial court in its order, cite any Georgia case affirming or reversing the grant of a motion to suppress specifically based upon the "stalking horse" doctrine.

[10] 534 U. S. 112 (122 SC 587, 151 LE2d 497) (2001).

[11] Id. at 122.

[12] Id. at 116.

[13] Id. at 121.

[14] *Samson v. California*, ___ U. S. ___ (126 SC 2193, 165 LE2d 250) (2006) (applying a California statute that required every parolee to consent to search by "a parole officer or other peace officer . . . with or without a search warrant and with or without cause") (punctuation omitted).

[15] Id. at 2198 (III).

[16] Id. at 2199.

[17] Id. at 2202.

conducted pursuant to a special condition of *probation* need not be made as a routine incident of the probation supervision process. The rule is that there must be some conduct reasonably suggestive of criminal activity to trigger the search. It can be prompted by a good-faith suspicion, arising from routine police investigative work. Accordingly as a general rule, the police can search a probationer, who is subject to such a special condition of probation, at any time, day or night, and with or without a warrant, provided there exists a reasonable or good-faith suspicion for search, that is, the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass probationer).[18]

As explained by the Supreme Court, a parolee has even fewer expectations of privacy than a probationer because "[t]he essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abides by certain rules during the balance of the sentence."[19] Certainly, therefore, a search made pursuant to a special condition of parole that is based upon a reasonable or good-faith suspicion of criminal activity is permissible.[20]

Here, it is undisputed that Cauley was on parole at the time of his arrest and that, as a condition thereof, he had specifically consented to warrantless searches of his "person, papers, place of residence, automobile[,] or any other property under [his] control" by his or any other parole officer at any time. There is no contention that Cauley was unaware of this parole condition.[21] Thus, Cauley's Fourth Amendment waiver was valid.[22]

We further conclude that there is no evidence that the police or the parole officers acted in bad faith, in an arbitrary and capricious manner, or solely to harass Cauley.[23] Pretermitting whether or not reasonable suspicion is required, we find that the officers did have

---

[18] (Emphasis supplied.) *Rocco v. State*, 267 Ga. App. 900, 903 (2) (601 SE2d 189) (2004).

[19] (Punctuation omitted.) *Samson*, supra at 2198.

[20] See *Dean v. State*, 151 Ga. App. 847, 848-849 (261 SE2d 759) (1979) (it is not unreasonable to require that a parolee consent to a warrantless search as a condition of parole). See also *Rocco*, supra; *Fox v. State*, 272 Ga. 163, 166 (2) (527 SE2d 847) (2000) (warrantless search of a probationer must be based upon reasonable grounds to believe that probationer has contraband or has engaged in illegal activity at the search location).

[21] Cauley's parole officer confirmed that he reviewed the parole certificate containing the search condition with Cauley, and that he watched Cauley sign it.

[22] See *Samson*, supra at 2199; *Dean*, supra; compare *Fox*, supra at 164-165 (1) (search condition of probation invalid where it was not discussed with the probationer until after he entered his plea).

[23] See *Rocco*, supra (search was reasonable when officers were acting on information that person on bail for drug offenses was involved in drug activity).

reasonable grounds to believe that the vehicle driven by Cauley contained drugs. Investigator Gray received a telephone call from a person with whom Gray had been working drug cases for the previous six or seven months. According to Gray, the informant had previously provided him with information resulting in numerous drug purchases, thereby establishing the reliability of the caller.[24] The informant stated that he had personally seen a black bag containing a large amount of drugs in a gray Mitsubishi Montero, and that the vehicle was being detailed at an automobile detailing shop. The caller identified the driver of the vehicle by a nickname. Ten minutes after the telephone call, Gray arrived at the detail shop identified by the caller, where he observed a gray Mitsubishi Montero being detailed.

Because the reliable caller gave detailed information which Gray corroborated within ten minutes of the call, we conclude that the authorities had reasonable grounds to believe that there were drugs in the vehicle driven by Cauley.[25] The police told Cauley's parole officer that they suspected he had drugs in his vehicle, and therefore, we conclude that the search of Cauley's vehicle was reasonable.[26]

2. Cauley contends that his illegal detention by the police before the parole officer arrived on the scene requires suppression of the evidence. We disagree.

There are three tiers of police-citizen encounters: "verbal communications which involve no coercion or detention; brief stops or seizures which must be accompanied by a reasonable suspicion; and arrests which can only be supported by probable cause."[27] "The first tier 'provides no Fourth Amendment protection.' "[28] In a first-tier encounter, "police may approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave."[29] A request to search during a first-tier encounter does not require articulable suspicion.[30]

---

[24] See *Butler v. State*, 185 Ga. App. 478, 480 (1) (364 SE2d 612) (1988) (reliability of an informant may be established by his past history of reliability).

[25] Compare *Fox*, supra at 166-167 (no reasonable suspicion that probationer was engaged in criminal activity where the police officer could not recall the name of the tipster; the tipster was a prisoner; the officer had never before received information from the tipster; and the tipster did not explain the basis for his belief that the probationer was selling marijuana).

[26] See *Samson*, supra; *Rocco*, supra; *Reece v. State*, 257 Ga. App. 137, 139-140 (2) (b) (570 SE2d 424) (2002); see also *Wells v. State*, 212 Ga. App. 60, 63 (2) (441 SE2d 460) (1994).

[27] (Punctuation omitted.) *Hutto v. State*, 259 Ga. App. 238, 239 (576 SE2d 616) (2003).

[28] *Carrera v. State*, 261 Ga. App. 832, 833 (584 SE2d 2) (2003).

[29] Id. at 834.

[30] Id. at 833.

The State argued that the interaction between the police officers and Cauley, until his parole officer was contacted, constituted a first-tier citizen-police encounter. The trial court agreed, characterizing the interaction as "a citizen contact," and finding that Cauley was not illegally detained.

Here, Investigator Gray approached Cauley's stopped, parked vehicle, asked to see Cauley's license and proof of insurance, and then requested consent to search his vehicle. Although Gray was driving a marked police car, he did not handcuff Cauley, nor did he ever tell him he was not free to leave.[31] "Shortly thereafter," Captain Capps arrived and asked Cauley whether he was on parole. Cauley confirmed his parole status and another officer spoke with Cauley's parole officer via telephone. During the telephone conversation, Parole Officer Lord advised that Cauley was subject to warrantless searches as a condition of his parole, and stated that he would come to the scene. There is no evidence in the record that — prior to the arrest — Cauley was prevented from leaving the scene, any of the officers physically touched Cauley, any of the officers displayed a weapon, the lights or sirens on the police cars were activated, or any of the officers used language or tone of voice indicating that compliance with their requests might be required.

"[I]t is well established that an officer's approach to a stopped vehicle and inquiry into the situation is not a 'stop' or 'seizure' but rather clearly falls within the realm of the first tier of police-citizen encounters."[32] An officer may ask to see a person's license and proof of insurance, ask for consent to search, and inquire about possible criminal or suspicious activity during a first-tier police-citizen encounter, without requiring articulable suspicion, "as long as the police do not convey a message that compliance with their requests is required."[33]

Here, the presence of several officers and the *possibility* that Investigator Gray did not immediately return Cauley's license and proof of insurance are the only factors upon which a reasonable person might have believed that he was not free to leave.[34] The totality of the circumstances in this case, particularly the lack of evidence to suggest that Cauley's compliance with Gray's request was

---

[31] Several other officers in marked cars arrived "a few minutes" after Gray began speaking to Cauley.

[32] (Punctuation omitted.) *Marion v. State*, 268 Ga. App. 699, 700-701 (2) (603 SE2d 321) (2004).

[33] *Stokes v. State*, 238 Ga. App. 230, 232 (518 SE2d 447) (1999); see *Davidson v. State*, 257 Ga. App. 260, 263 (1) (b) (570 SE2d 698) (2002).

[34] Investigator Gray testified that after he looked at Cauley's license and proof of insurance, he began to fill out a "field contact form." There is no testimony in the record regarding when and if Gray returned the items to Cauley.

required, support a conclusion that the interaction between the police and Cauley, until his parole officer was contacted, constituted a first-tier police-citizen encounter, which Cauley concedes.[35]

However, even assuming that the conduct of the police constituted a brief stop or seizure, the police had the requisite articulable suspicion to justify the stop.[36] As set forth in Division 1, the information the reliable informant provided to Investigator Gray, combined with Gray's observations, provided articulable suspicion that Cauley was engaged in criminal activity.[37] And, pretermitting whether the police detained Cauley after they learned he was on parole, they were entitled to do so until they were able to contact his parole officer.[38]

Finally, assuming that the police detained Cauley after they spoke to his parole officer, any such detention was reasonable under these circumstances. As we concluded in Division 1, the police had reasonable grounds to suspect that Cauley was engaged in criminal activity. They contacted Cauley's parole officer, who confirmed that Cauley was on parole and therefore subject to search, and the parole officer told police he would come to the scene. It took only 20 to 30 minutes for the parole officers to arrive, during which time Cauley was neither handcuffed nor restrained in a police car. Accordingly, Cauley's contention that he was illegally detained is without merit.[39]

*Judgment reversed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 1, 2006 — ▮▮▮▮▮▮▮▮▮

*Kelly R. Burke, District Attorney, Timothy M. Marlow, Assistant District Attorney*, for appellant.
*A. James Rockefeller*, for appellee.

---

[35] See *Carrera*, supra at 834; *State v. Cates*, 258 Ga. App. 673, 674-675 (574 SE2d 868) (2002) (physical precedent only); *Mijares v. State*, 252 Ga. App. 804, 805 (2) (556 SE2d 927) (2001); *Stokes*, supra; *Voyles v. State*, 237 Ga. App. 886, 886-887 (1) (517 SE2d 113) (1999).

[36] *Stokes*, supra ("Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity.").

[37] See *Steed v. State*, 273 Ga. App. 845, 846-847 (1) (616 SE2d 185) (2005) (a tip from a known reliable informant gives police reasonable, articulable suspicion to initiate an investigative stop); *Wilson v. State*, 249 Ga. App. 560, 562 (549 SE2d 418) (2001); *Rider v. State*, 222 Ga. App. 602, 604 (475 SE2d 655) (1996).

[38] See *Solis*, supra at 497 (1) (a).

[39] See, e.g., *King v. State*, 258 Ga. App. 872, 874-875 (1) (575 SE2d 679) (2002) (police needed only reasonable suspicion to detain handcuffed suspects in patrol car for 30 minutes while they searched suspects' car and examined their shoes for mud); *Lane v. State*, 248 Ga. App. 470, 473 (4) (545 SE2d 665) (2001), rev'd on other grounds, 274 Ga. 751 (559 SE2d 455) (2002) (officer authorized to detain suspect for 20 minutes in patrol car until witness could identify him).