## A08A0307. BROOKS v. THE STATE.
(664 SE2d 827)

BARNES, Chief Judge.

Following a bench trial, and the subsequent denial of his new trial motion, Jerry Matthew Brooks appeals his convictions for violation of the Georgia Controlled Substances Act by possession of methamphetamine and possession of a firearm by a convicted felon. He contends that the trial court erred in denying his motion to suppress evidence discovered during a warrantless probation search of his person and residence.

Where the evidence at a hearing on a motion to suppress is uncontroverted and no question of credibility is presented, we review the trial court's application of the law to these undisputed facts de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). As to questions of fact and credibility, however, we construe the evidence most favorably to the upholding of the trial court's findings and judgment, which must be accepted unless clearly erroneous. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

Viewed in this light, the facts show that a Cherokee County deputy went to Brooks' residence and spoke with him after Brooks called and complained that the Cherokee Multi-Agency Narcotics Squad (CMANS) was conducting surveillance of his property, trespassing, and scaring his small child. Brooks told the officer that if CMANS was "sneaking up and watching him" he knew it. The officer later talked with a CMANS agent about Brooks' concerns, and was advised that the agency was not observing Brooks or his property. Some later time — the exact time is unclear from the record — the CMANS agent received two phone tips regarding

Brooks from its anonymous tip line. The agent testified that tips are usually provided to him within "a day or two" of the calls. The tips indicated that Brooks had methamphetamine on his property.

The agent conducted a background check on Brooks and determined that he was on probation for a 1997 felony drug conviction, and that as a condition of probation Brooks was required to

> from time to time, upon any request by the probation officer, surveillance officer, or any law enforcement officer, produce a breath, spittle, urine and/or blood specimen for analysis for possible presence of a substance prohibited by this order including alcohol . . . [and]

> shall submit to a search of his/her business, person, houses, papers and/or effects . . . any time of day or night with or without a search warrant whenever requested to do so by a probation officer, surveillance officer, or any law enforcement officer and specifically consents to the use of anything seized as evidence in any proceeding against him/her.

The agent testified at the motion to suppress hearing that based on "the information [he] received from [the deputy], from the anonymous tip, and the fact that [Brooks] was subject to submitting to searches of his person and residence in accordance with his probation," he went to Brooks' residence to conduct a probation search. He further testified that his request for Brooks to submit to a probation search was part of his criminal investigation into the anonymous phone tips related to reported methamphetamine at Brooks' home. The record is unclear as to how much time transpired between when the agent got the tip and when he went to conduct the search of Brooks' home. The agent testified that it would have been a short period of time, "long enough for me to find out his criminal history and find out about his probation." He acknowledged that it might possibly have been from a week to two weeks, but asserted that "the tips were recent."

On August 17, 2006, several CMANS agents, including the initial agent, went to Brooks' property to conduct the search. Brooks arrived shortly after the officers, and agreed to the search without objection. The agent testified that Brooks appeared very nervous "to the point of being paranoid," and repeatedly accused the agency of spying on him, sneaking around his property, and tapping on his son's bedroom window. He also testified that based on his experience, Brooks' paranoid behavior was indicative of methamphetamine use. Brooks complained to the agent about "individuals running around

in his woods, hiding in the woods, watching him from the woods, [and] following him around." Brooks told the agent that he hooked up a camera to take pictures of the people in the woods, and although he claimed to see images on the screen, the agent testified that "there was nothing there."

Agents recovered a twelve-gauge shotgun in a PVC pipe near the barn, and Brooks' urine sample tested positive. Brooks had acknowledged before providing the sample that it would be "hot" for methamphetamine. Brooks was arrested for possession of methamphetamine, and possession of a firearm by a convicted felon.

Brooks filed a motion to suppress the evidence, which after a hearing was denied.

1. Brooks asserts that his special condition of probation in allowing a search at any time is invalid. Generally, a law enforcement officer may conduct a search pursuant to a special condition of probation "at any time, day or night, and with or without a warrant, provided there exists a reasonable or good-faith suspicion for search, that is, the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass [the] probationer)." (Citations and punctuation omitted.) *Reece v. State*, 257 Ga. App. 137, 140 (2) (570 SE2d 424) (2002). Brooks first argues that in this case there was no valid Fourth Amendment waiver as a special condition of his probation. He maintains that because he specifically objected to the waiver at the time of sentencing, his "Fourth Amendment rights were unlawfully denied to him by the imposition of [a] Fourth Amendment waiver whereby the condition was attached by the sentencing judge without negotiation and over valid objection."

The transcript of the 1997 sentencing hearing reflects that after Brooks was presented with the search provisions as a condition of his probation, counsel asked, "[d]oes this mean that as a condition of probation that this Court is ordering [Brooks] to waive his rights? 'Cause I want the record to reflect that he's not waiving, he's just being ordered." The court responded that it was "as a condition of probation." Brooks then stated that he would like to file a notice of appeal and a motion for a supersedeas bond as soon as the sentence was signed because "there's [sic] some issues that should be addressed by the Appellate Courts."

In *Fox v. State*, 272 Ga. 163, 164-165 (1) (527 SE2d 847) (2000), the case Brooks cites as controlling precedent, our Supreme Court addressed a similar special condition of probation, in which the appellant had purportedly waived his Fourth Amendment rights. The waiver was used as the basis for a search of Fox's home after a tipster reported that Fox was selling marijuana. At that time, Fox was serving ten years on probation after pleading guilty to a burglary

charge. Apparently, no mention of any condition or special condition of probation was made during the plea process. Instead, after the court pronounced its ten-year sentence at the end of the plea colloquy, Fox was taken to a probation office without his attorney, where a probation officer informed him of the conditions of probation. A special condition of probation was that he submit to a probation search whenever requested, with or without a warrant.

In reviewing the probationary search, the Court was troubled that

> Fox did not agree to the condition of probation as part of the plea bargain agreement, and was not given the option to consider whether prison was an acceptable alternative in light of this condition of probation. Rather, after the plea agreement was reached and the court announced the sentence, Fox was told by a probation officer, outside the presence of his attorney and of the trial court, that the waiver of his Fourth Amendment rights was a condition of his probation. The record demonstrates that this was the first time that this condition of probation was discussed.

*Fox v. State*, supra, 272 Ga. at 165 (1). It concluded that "under these circumstances, the waiver of Fox's Fourth Amendment rights was not valid[, and a]ccordingly, the waiver cannot be relied upon to support the search of Fox's residence." Id.

Here, in denying the motion to suppress, the trial court distinguished Brooks' case from *Fox*.

> [Here], the defendant had no right to withdraw a plea. He was at the mercy of the Court. The Court could have given him the maximum sentence. He didn't. . . . He gave him the sentence and said this is your sentence but we're going to let you be on probation. It's a condition of your probation that you be subject to this search. This doesn't say waive anything. It says that you submit to a search of your person, place, or things, whatever. [Brooks' attorney] objected to it, but he didn't appeal it. . . . He did enter on his probation under that condition of probation. He did not ask for supersedeas while that was appealed, therefore the sentence was executed as pronounced. In my opinion, that's a waiver of any objection to that condition of probation.

We agree with the trial court. Pretermitting whether Brooks' response when sentence was imposed was an objection, it appears that he thereafter willingly subjected himself to the conditions of his

probation, including the Fourth Amendment waiver. He did nothing after the fact to perfect his objection. Unlike Fox, he was given the option of deciding whether prison was an acceptable alternative to the probationary conditions. Nothing in the record indicates that he did anything other than concede to the terms of his probation. A waiver of constitutional rights as a condition of probation "at least *impliedly* consented to . . . [is] an acceptable alternative to prison." (Emphasis supplied.) *Luke v. State*, 178 Ga. App. 614, 616 (2) (344 SE2d 452) (1986). See *Peardon v. State*, 287 Ga. App. 158, 160 (651 SE2d 121) (2007) (acceptance of special condition of probation regarding waiver of Fourth Amendment rights provided police with authority to search probationer, his vehicle, and his house pursuant to a tip).

2. Brooks also argues that the police did not have reasonable grounds to conduct the search. Even

[i]f a warrantless search has occurred pursuant to a special condition of probation, a reviewing court [must] analyze the facts and circumstances to determine whether the search in question was based upon reasonable grounds, balancing the government's need to search against the invasion caused by the warrantless search.

*Harrell v. State*, 253 Ga. App. 440, 442 (2) (559 SE2d 155) (2002).

Here, the trial court made no determination about the reasonableness of the search, finding the waiver, and the agents' good faith belief that they were operating with a waiver, sufficient to authorize the search. It is clear, however, that even in circumstances of a Fourth Amendment waiver,

there must be some conduct reasonably suggestive of criminal activity to trigger the search. It can be prompted by a good-faith suspicion, arising from routine police investigative work. Accordingly as a general rule, the police can search a probationer, who is subject to such a special condition of probation . . . provided there exists a reasonable or good-faith suspicion for search, that is, the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass probationer). [Cit.]

*State v. Cauley*, 282 Ga. App. 191, 195 (1) (638 SE2d 351) (2006).

In *Fox*, the Court found the tip from a tipster of unknown reliability who provided no details by which the deputy could corroborate the tip insufficient to create a reasonable suspicion that

Fox was engaged in criminal activity. In a footnote, the Court indicated that during a probationary search other factors

> might impact the question of the reasonableness of the search. Those factors are that the deputy did not attempt to contact a probation officer for input on Fox's probation, did not involve a probation officer in the actual search, and appears to have conducted the search solely for law enforcement purposes rather than probationary purposes.

*Fox v. State*, supra, 272 Ga. at 167, n. 16.

In this case, the agent had two anonymous tips that were received from a tip-line number that is advertised in public service announcements and on the bumpers of agency cars. The agent said that every tip is taken seriously, and that the calls are anonymous so that people can "leave tips without fear of retribution from whoever they called on." When asked if the tips came in close proximity to each other the agent testified, "I believe so." The agent testified that based on the information that Brooks thought he was being watched by CMANS, the tips, and the fact that Brooks had a Fourth Amendment waiver, he "felt that was enough to go out there." The agent checked with Brooks' probation officer who confirmed that Brooks was subject to the Fourth Amendment waiver. The probation officer, however, was not involved in the search.

Based on this evidence and Brooks' tacit acceptance of this special condition, police had the authority to search him and his house pursuant to the tips. See *Reece v. State*, supra, 257 Ga. App. 139-140 (2) (information that defendant was living with a drug user and had appeared intoxicated provided reasonable suspicion to search probationer); *State v. Cauley*, supra, 282 Ga. App. at 195 (detailed, corroborated tip from reliable informant constituted reasonable grounds to search parolee). Here, there is no evidence that the police acted arbitrarily, or with the intent to harass Brooks. In order to conduct a search pursuant to a special condition of probation, "there must be some conduct *reasonably* suggestive of criminal activity to trigger the search." Id. Here, in addition to the tips, the agent knew Brooks had called CMANS to complain he was being watched. He also contacted Brooks' probation officer for input on the search. The Supreme Court in *Fox* inferred that input of the probation officer before a probationary search is a factor to consider in determining whether the search was reasonable and in good faith.

Here, the evidence gave the officers a reasonable or good faith suspicion of criminal activity, which justified the search pursuant to Brooks' Fourth Amendment waiver.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JULY 3, 2008 — 

*John A. Nuckolls, John Alexander Nuckolls, Jr.*, for appellant.
*Garry T. Moss, District Attorney, Lawton W. Scott, Sara A. Thompson, Assistant District Attorneys*, for appellee.