## A02A1114. REECE v. THE STATE.
(570 SE2d 424)

BLACKBURN, Chief Judge.

Following a bench trial, Wesley Terry Reece appeals his conviction on two counts of possession of a firearm by a convicted felon as well as the contemporaneous revocation of his probation, contending that: (1) the evidence was insufficient to support either the conviction or the revocation; and that the trial court erred by (2) finding that his arrest was the result of a lawful search pursuant to a prior waiver of Fourth Amendment rights as a condition of probation; and (3) finding that certain statements were not inadmissible due to a *Miranda* violation. For the reasons set forth below, we affirm.

1. Reece, an admitted felon, contends that the evidence was insufficient to support either (a) his conviction for possession of a firearm by a convicted felon or (b) the corresponding revocation of his prior probation. We disagree.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Reece] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The . . . verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Punctuation omitted.) *Kovacs v. State*.[1] See *Jackson v. Virginia*.[2]

(a) Viewed in this light the record shows that, following a guilty plea for possession of marijuana with intent to distribute, Reece was sentenced to six years probation on June 18, 1998. In a later, unrelated incident, Reece pled guilty to possession of amphetamines, and, on March 14, 2000, Reece was sentenced to eight years probation. As conditions of both probation sentences, Reece agreed to submit to random drug testing, waive his Fourth Amendment rights, and avoid alcohol and narcotics, among numerous other conditions.

On April 4, 2001, Reece reported to his probation officer, Anthony Cantrell. Cantrell immediately noticed that Reece was slurring his words and weaving as he walked. Suspicious that Reece was under the influence of drugs or alcohol, Cantrell told him that he wanted him to submit to a drug test and requested a urine sample. Reece refused, stating that he was not able to urinate at that time. Cantrell then led Reece to a waiting room and told him to stay there

---

[1] *Kovacs v. State*, 227 Ga. App. 870-871 (1) (490 SE2d 539) (1997).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

until he was able to cooperate. Instead, Reece fled the premises and did not return.

On July 18, 2001, Cantrell learned that another probationer, Sandy Hawkins, was presently staying at Reece's home. Sandy Hawkins' ex-husband also stated that she had been using illegal drugs at his home where he had found hypodermic needles used by Sandy. Hawkins also stated that Sandy was living at Reece's home. Acting on this information and their knowledge that Reece had appeared drugged on his last report date, probation officers and police entered Reece's home to conduct a search for drugs pursuant to Reece's previous consent to search.

Once inside, the police officers found Reece in his bed and restrained him for their safety by handcuffing him. Prior to conducting the search, one of the officers asked Reece if there was "anything in the house which shouldn't be [there]." Reece responded affirmatively. The officer immediately thereafter read Reece his *Miranda* rights, and Reece volunteered that there was a shotgun under the bed and a loaded handgun between the mattresses. The police also found two baggie corners in a trash can next to the bed which was consistent with the use of methamphetamines. The baggies were too small for medical testing.

In this case, the evidence shows that Reece, an admitted convicted felon, had actual knowledge of and direct access to two weapons concealed in his bedroom. This evidence is sufficient to support his conviction for possession of a firearm by a convicted felon.

OCGA § 16-11-131 (b) provides:

> Any person who . . . has been convicted of a felony by a court of this state or any other state; by a court of the United States including its territories, possessions, and dominions; or by a court of any foreign nation and who receives, possesses, or transports any firearm commits a felony and, upon conviction thereof, shall be imprisoned for not less than one nor more than five years; provided, however, that if the felony as to which the person is on probation or has been previously convicted is a forcible felony, then upon conviction of receiving, possessing, or transporting a firearm, such person shall be imprisoned for a period of five years.

Reece's argument that there was insufficient evidence to prove that the weapons in question were actual firearms and not toys is unavailing. In this case, although the police officer initially testified only that the weapons "appeared to be in working order," he went on to explain that he had examined the .38 caliber pistol and found that its chamber was loaded. This evidence was sufficient to allow the jury

to infer that the pistol was not a toy. With regard to the shotgun, Reece's son, who claimed ownership of the shotgun, stated that he had originally placed it in his father's bedroom to be used as protection from dangerous intruders. The credibility of witnesses is for the trier of fact. It is the possession, not the ownership, of the weapon by a convicted felon which constitutes a criminal violation. The jury could appropriately infer that the shotgun was in Reece's possession and was in working order. See generally *Jolly v. State*.[3]

(b) The evidence described above was also sufficient to support the revocation of Reece's probation, which requires proof of commission of the crime only by a preponderance of the evidence. OCGA § 42-8-34.1 (a). Moreover, Reece's refusal to submit to a urinalysis on April 4, 2001, served as an independent ground for revocation of his probation, and, although Reece attempts to discredit Cantrell's testimony in this regard, issues of credibility are for the trier of fact, not this Court. *Kovacs*, supra.

2. Reece contends that his conviction and probation revocation must be reversed because the evidence upon which they were based should have been suppressed as the product of an illegal search. Specifically, Reece argues that: (a) the State failed to show that Reece's prior waivers of his Fourth Amendment rights were knowing and voluntary and (b) the State conducted the search in bad faith, in that the target was actually Sandy Hawkins.

(a) Reece contends that the State failed to show that his prior waivers of his Fourth Amendment rights were knowing and voluntary. Reece, however, waived this right on two occasions following guilty pleas. At his bench trial in this case, however, Reece took issue only with the waiver on March 14, 2000, arguing that, as a pro se defendant, he did not understand the waiver. Pretermitting the validity of the March 14, 2000 waiver, Reece had previously waived his Fourth Amendment rights on June 18, 1998, while represented by counsel. This prior waiver, which was never challenged, moots Reece's argument regarding his pro se waiver. And, although Reece attempts to question the earlier waiver for the first time on appeal, he has forfeited his right to do so by not raising the argument below.

(b) Reece further contends that the State conducted the search of his home in bad faith, arguing that the State failed to show a legitimate reason for the search and that the search was really a ruse to search Hawkins.

Rather than face incarceration for possession of amphetamines, Reece agreed to certain conditions on his probation, including a Fourth Amendment waiver, as discussed above.

---

[3] *Jolly v. State*, 183 Ga. App. 370 (358 SE2d 912) (1987).

By accepting this special condition of probation, and to the extent a search and seizure was not otherwise tainted without subsequent attenuation so as to compel invocation of the exclusionary rule, [Reece] waived his Fourth Amendment right. A search conducted pursuant to a special condition of probation need not be made as a routine incident of the probation supervision process. The rule is that there must be some conduct reasonably suggestive of criminal activity to "trigger" the search. It can be prompted by a good-faith suspicion, arising from routine police investigative work. Accordingly as a general rule, the police can search a probationer, who is subject to such a special condition of probation, at any time, day or night, and with or without a warrant, provided there exists a reasonable or good-faith suspicion for search, that is, the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass probationer).

(Citations and punctuation omitted.) *State v. Sapp*.[4]

In this case, the police were not acting in bad faith or in an arbitrary and capricious manner. Here, the police had a good faith suspicion that Reece was living with someone using illegal drugs and might be using them himself. This information provided a reasonable suspicion for conducting the subject search.

3. Reece contends that the trial court erred by admitting into evidence his admission that there were firearms located in his bedroom. Specifically, Reece argues that this admission was tainted by a prior statement obtained from him before he was appropriately advised of his *Miranda* rights.

The standard of review is threefold: (a) if there is any evidence to support those findings, we will not disturb them; (b) the court's decisions regarding questions of fact and credibility must be accepted unless clearly erroneous; and (c) we construe the evidence to uphold the trial court's findings. *Blackford v. State*.[5]

In this case, shortly after entering Reece's home, a police officer restrained Reece and asked him whether there was anything in his home that he should know about. Reece responded affirmatively, but, before he could elaborate, the police officer stopped Reece and informed him of his *Miranda* rights. After this warning, Reece voluntarily informed the officer about the location of the weapons. Because all of Reece's answers, both before and after *Miranda* warnings, were voluntary, Reece's admissions regarding the handguns were properly admitted.

---

[4] *State v. Sapp*, 214 Ga. App. 428, 431-432 (3) (448 SE2d 3) (1994).
[5] *Blackford v. State*, 251 Ga. App. 324 (554 SE2d 290) (2001).

The rationale for not suppressing the fruits of a voluntary statement taken in violation of *Miranda* and *Edwards* [*v. Arizona*][6] is that these cases announced prophylactic rules designed to protect suspects' Fifth Amendment rights, but the rules were not themselves constitutional. Referring in [*Oregon v.*] *Elstad*[7] to the admissibility of the fruit of a *Miranda*-tainted statement, the Supreme Court stated, "If errors are made by law enforcement officers in administering the prophylactic *Miranda* procedures, they should not breed the same irremediable consequences as police infringement of the Fifth Amendment itself."

(Footnote omitted.) *Taylor v. State*.[8]

In this case, the evidence, construed in favor of the trial court's findings, does not show that Reece was actually coerced into making his initial statement that there was something in his home that the police should know about. Although Reece had been placed in handcuffs, the police officer made no attempt to force Reece to incriminate himself. Instead, the police officer asked him whether there was anything in the room a single time in a nonthreatening manner. Although this question was in violation of *Miranda*, the resulting voluntary answer did not taint Reece's further answers regarding the firearms in his bedroom given after a proper reading of his *Miranda* rights.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED AUGUST 22, 2002.

*Bagwell & Corso, Arturo Corso*, for appellant.

*Lydia J. Sartain, District Attorney, Alison W. Toller, Assistant District Attorney*, for appellee.

[6] *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981).
[7] *Oregon v. Elstad*, 470 U. S. 298, 309 (105 SC 1285, 84 LE2d 222) (1985).
[8] *Taylor v. State*, 274 Ga. 269, 276 (4) (553 SE2d 598) (2001).