A07A1253. THOMAS v. THE STATE.
(651 SE2d 116)

MIKELL, Judge.

After a bench trial, Stanley Leroy Thomas was convicted of possession of methamphetamine with intent to distribute, possession of hydrocodone, and possession of alprazolam. On appeal, Thomas

argues that the trial court erred when it denied his motion to suppress because the state's justification for its warrantless search of his home was based on hearsay evidence. We affirm.

Thomas asserts that we must review the trial court's denial of his motion to suppress de novo. While we do conduct a de novo review of the trial court's application of law to the undisputed facts when the evidence is uncontroverted and the credibility of the witnesses is not in question,[1] where the credibility of a witness is determinative of the outcome, we apply the following three-part test:

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[2]

The evidence adduced at the hearing on Thomas's motion to suppress shows that Officer Douglas Matthews of the Hall County Sheriff's Office's Multiagency Narcotics Squad testified that on January 7, 2005, he investigated complaints of drug activity and stolen property at 4031 Pete's Drive. Upon his arrival at the address, a car was parked in front of the house. Thomas was sitting in the driver's seat and Christopher Collins, who Matthews knew had been released on bond for trafficking methamphetamine, was standing by the side of the car. Matthews testified that he stopped his car and approached Collins, who had begun to walk away toward a nearby junkyard, and asked for consent to search him; that Collins immediately said "I have a little in my pocket"; that he searched Collins under the Fourth Amendment waiver that was a condition of Collins's bond; and that he found a plastic bag of what appeared to be crystal methamphetamine. Collins told Matthews that he purchased the substance from

---

[1] *State v. Brown*, 278 Ga. App. 457, 459 (629 SE2d 123) (2006). Even though a witness's testimony may be uncontradicted, the trier of fact may nonetheless choose to disbelieve that witness or may accept or reject any part of that witness's testimony. Id. at 460.

[2] (Footnote omitted.) Id. at 459-460.

Thomas, who had more of it in a little gray cooler covered with blue and red dots that was located behind the residence.

Matthews approached Thomas and informed him of the complaints of drug activity and stolen property and asked for consent to search his property. Thomas refused. Matthews testified that he knew Thomas was on parole so he called parole officer John Grantham; that 20 minutes later, Grantham arrived with another parole officer, and that he assisted them in conducting a Fourth Amendment waiver search of Thomas's property; and that 30 minutes into the search, they located the cooler that Collins described under a board that Thomas had been standing on during the search. Matthews testified that the cooler contained several bags of crystal methamphetamine, twelve hydrocodone pills, nine alprazolam pills, baggies, a ledger, and a set of scales.

Grantham testified that when Matthews called the parole office, he actually spoke to Officer Rusty Griffin, who was Thomas's parole officer and that Grantham rode along with Griffin to the scene. Grantham did not know Thomas or talk to Griffin about him en route to the scene but did recall that Griffin told Matthews that Thomas was on parole and had a Fourth Amendment waiver as a condition thereto. Griffin did not testify, but Grantham explained that all parolees are required to waive their Fourth Amendment rights as a condition of parole. He testified that as soon as parolees are released from prison, they are ordered to report to the parole office and one of the first things explained to them is the waiver of their Fourth Amendment rights, which authorizes any parole officer to conduct a warrantless search of their person, papers, or place of residence.

The facts as testified to by Grantham and Matthews are included in the trial court's order denying the motion to suppress. The trial court noted that no signed document evidencing Thomas's waiver of his rights was introduced into evidence. Nonetheless, the trial court concluded that

> the conversation with Collins, in which he admitted to having just received methamphetamine from the Defendant, gave the officer probable cause and reasonable articulable suspicion that the Defendant was engaged in criminal activity. The Officer, aware that the Defendant was on parole, waited until Parole Officers Griffin and Grantham arrived prior to searching the property. The search of the property was based upon the information from Collins and the Defendant's Fourth Amendment Waiver.

Citing *Rocco v. State,*[3] the trial court wrote that "[t]he police can search a probationer, who is subject to such a special condition of probation, at any time, day or night, and with or without a warrant, provided there exists a reasonable or good-faith suspicion for search." The court concluded that there was conduct reasonably suggestive of criminal activity which triggered the search in the instant case. On appeal, Thomas argues that the evidence did not show that Thomas had, as a condition of his parole, waived his Fourth Amendment rights, nor did it show that Collins was a reliable informant, such that the officers were authorized to search his residence based on information provided by Collins. The trial court found otherwise.

1. Thomas contends that the trial court erred when it concluded that he had waived his Fourth Amendment rights based on Grantham's testimony that all parolees were required to do so as a condition of parole. We disagree.

The prosecutor introduced into evidence Thomas's guilty plea to possession of methamphetamine with the intent to distribute and the sentencing disposition, both of which were filed on December 18, 2000. For that offense, he was sentenced to serve ten years, five years in confinement and the balance on probation. We can infer therefrom that Thomas was on parole when this incident occurred in January 2005, because the probated portion of his sentence had not yet begun. Grantham, a parole officer himself, testified unequivocally that without exception, all parolees are required to waive their Fourth Amendment rights as a condition of parole. Since it is undisputed that Thomas was a parolee and that Grantham had personal knowledge about the parole procedures, the trial court was authorized to infer from the evidence that Thomas waived his Fourth Amendment rights as a condition to parole.[4]

As a parolee, Thomas had "fewer expectations of privacy than [a] probationer[ ], because parole is more akin to imprisonment than probation is to imprisonment."[5] In Georgia, in order to conduct a search pursuant to a special condition of probation,

> there must be some conduct reasonably suggestive of criminal activity to trigger the search. It can be prompted by a good-faith suspicion, arising from routine police investigative work. Accordingly as a general rule, the police can

---

[3] 267 Ga. App. 900, 903 (2) (601 SE2d 189) (2004).

[4] See generally *Dean v. State,* 151 Ga. App. 847, 849 (261 SE2d 759) (1979) ("[r]equiring consent to such a search as a condition of parole is not unreasonable") (citation omitted).

[5] *Samson v. California,* 547 U. S. 843 (III) (126 SC 2193, 165 LE2d 250) (2006) (upheld validity of suspicionless search of a parolee conducted by a police officer pursuant to a condition of parole).

search a probationer, who is subject to such a special condition of probation, at any time, day or night, and with or without a warrant, provided there exists a reasonable or good-faith suspicion for search, that is, the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass probationer).[6]

"Certainly, therefore, a search made pursuant to a special condition of parole that is based upon a reasonable or good-faith suspicion of criminal activity is permissible."[7]

In the instant case, the officers approached Collins, who they knew to be out on bond for trafficking in methamphetamine. Collins admitted that he had drugs on his person, which the officers immediately confirmed upon searching Collins. Collins then told them that Thomas had given him the drugs and told them that there were more drugs in a gray cooler covered with blue and red dots behind Thomas's residence. The officers contacted the parole office, waited for the parole officers to arrive, and then searched Thomas's residence pursuant to his Fourth Amendment waiver, locating the cooler matching the description given by Collins. The evidence supported the trial court's findings that the officers' conversation with Collins, along with the fact that they found methamphetamine on Collins's person, gave the officers a reasonable or good faith suspicion of criminal activity, which justified the search pursuant to Thomas's Fourth Amendment waiver.

2. Based on Division 1, we need not address Thomas's enumeration regarding Collins's reliability.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED AUGUST 9, 2007.

*Larry L. Duttweiler*, for appellant.
*Lee Darragh, District Attorney, Juliet Aldridge, Assistant District Attorney*, for appellee.

---

[6] *State v. Cauley*, 282 Ga. App. 191, 195 (1) (638 SE2d 351) (2006), citing *Rocco*, supra; see also *Reece v. State*, 257 Ga. App. 137, 140 (2) (b) (570 SE2d 424) (2002), citing *State v. Sapp*, 214 Ga. App. 428, 432 (3) (448 SE2d 3) (1994).

[7] (Footnote omitted.) *Cauley*, supra.