**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 19, 2016**

# In the Court of Appeals of Georgia

A16A0420. WHITFIELD v. THE STATE.

DILLARD, Judge.

Shane Whitfield appeals his conviction for possession of marijuana less than one ounce, arguing that the trial court erred in denying his pretrial motion to suppress evidence found during a search of his residence. Specifically, Whitfield—who was on probation and subject to a Fourth Amendment waiver at the time of the search—contends that the warrantless search of his residence was not supported by reasonable suspicion that he was violating the terms of his probation. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the trial court's ruling,[1] the evidence shows that in 2013, Whitfield entered a negotiated guilty plea to selling methyenedioxy methamphetamine and was sentenced to five years of probation. As one of the terms of his probation, Whitfield agreed to a Fourth Amendment waiver. Specifically, Whitfield agreed to

> submit to search of person, residence, papers, vehicle, and/or effects at any time of day or night without a search warrant, whenever requested to do so by a [p]robation [o]fficer or any other law[-]enforcement officer upon reasonable cause to believe that [he] is in violation of probation or otherwise acting in violation of the law, and . . . [to] consent to the use of anything seized as evidence in any judicial proceeding or trial.

Subsequently, in March 2015, Whitfield tested positive for marijuana during a monthly check-in with his supervising probation officer. But during his next monthly check-in on April 6, 2013, Whitfield tested negative for marijuana. Although Whitfield's April drug screen was negative, he told his probation officer that "he had been counting [the] days since his last use of marijuana and had been testing himself." And according to the probation officer's training, these actions are "two red flags for

---

[1] *See, e.g.*, *Christian v. State*, 329 Ga. App. 244, 245 (1) (764 SE2d 573) (2014).

somebody trying to subvert any kind of testing or detection of use." As a result of these "red flags," as well as Whitfield's positive drug screen the previous month, the probation officer asked another law-enforcement officer to "check-up" on Whitfield and "see what was at [his] house." The probation officer also conveyed to the officer that Whitfield was subject to a Fourth Amendment waiver.

On April 9, 2015, three law-enforcement officers complied with the probation officer's request and went to Whitfield's residence. When they arrived, Whitfield was at work, but his mother answered the door. Upon greeting Whitfield's mother, the officers asked her for permission to search Whitfield's bedroom, and she then led them to his room.[2] The officers then conducted a brief search of Whitfield's bedroom and found a tobacco grinder next to his bed. Although no marijuana was plainly visible, the officer who found the grinder opened it and discovered marijuana inside.

---

[2] We note that, during the suppression hearing, the trial court stated that whether Whitfield's mother gave valid consent for the search of his room was not at issue because the search in this case was not "a consent search," but rather, it was a search "under the show of authority." But in its order denying the motion to suppress, the court found that Whitfield's mother did in fact consent to the officers' initial entry into the home, and neither party challenges these findings on appeal.

Thereafter, Whitfield was charged, via accusation, with one count of possession of marijuana less than one ounce.[3] Prior to trial, Whitfield filed a motion to suppress the evidence found during the search of his residence. In support of this motion, he argued that the officers' entry into his home and the subsequent search of his bedroom were "without consent, probable cause, search warrant, lawful search incident-to-arrest or exigent circumstances," and therefore, the search was unlawful.[4] After a hearing on the matter, the trial court denied the motion. Later, on the same day of the suppression hearing, Whitfield proceeded to a stipulated bench trial after which the trial court found him guilty of the charged offense. This appeal follows.

---

[3] *See* OCGA § 16-13-30 (a) ("Except as authorized by this article, it is unlawful for any person to purchase, possess, or have under his or her control any controlled substance."); OCGA § 16-13-2 (b) ("Notwithstanding any law to the contrary, any person who is charged with possession of marijuana, which possession is of one ounce or less, shall be guilty of a misdemeanor . . . .").

[4] Although Whitfield's written motion to suppress did not acknowledge his Fourth Amendment waiver or the legal standard that must be satisfied to authorize a search under such a waiver, he did so during oral argument before the trial court at the conclusion of the suppression hearing. Thus, he preserved the argument he now raises on appeal. *See Brown v. State*, 310 Ga. App. 835, 836 (1) (a) (714 SE2d 395) (2011) ("[A] party must make either a written *or oral* objection or motion timely prior to or at trial so that the trial court may rule upon the issue to preserve it, or such issue is waived and not preserved." (punctuation omitted and emphasis supplied)).

4

At the outset, we note that in considering a trial court's denial of a motion to suppress, we construe the evidence "in favor of the court's ruling, and we review de novo the trial court's application of the law to undisputed facts."[5] With these guiding principles in mind, we turn now to Whitfield's claim of error.

Specifically, Whitfield argues that the trial court erred in denying his motion to suppress evidence because the warrantless search of his residence was not supported by reasonable suspicion that he was in violation of his probation. We disagree.

In accordance with the Fourth Amendment to the United States Constitution,[6] a search warrant in Georgia may issue only upon "facts sufficient to show probable

---

[5] *Minor v. State*, 298 Ga. App. 391, 392 (680 SE2d 459) (2009) (punctuation omitted).

[6] *See* U.S. CONST. amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *see also* GA. CONST. art. 1, § 1, ¶ XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the person or things to be seized.").

cause that a crime is being committed or has been committed . . . ."[7] And the Supreme Court of Georgia has acknowledged that "the Fourth Amendment applies to probationers."[8] Nevertheless, although searches must usually be accompanied by a warrant and supported by probable cause to be reasonable, "exceptions have been permitted when 'special needs,' beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable."[9] Indeed, the supervision of probationers that is necessary to operate a probation system presents "special needs that may justify departures from the usual warrant and probable-cause requirements."[10]

In 2013, rather than face incarceration for the sale of methyenedioxy methamphetamine, Whitfield agreed to certain conditions of probation, including the

---

[7] OCGA § 17-5-21 (a); *see also Sullivan v. State*, 284 Ga. 358, 360 (2) (667 SE2d 32) (2008); *Manzione v. State*, 312 Ga. App. 638, 639 (719 SE2d 533) (2011).

[8] *Fox v. State*, 272 Ga. 163, 165 (2) (527 SE2d 847) (2000); *see also Griffin v. Wisconsin*, 483 U.S. 868, 873 (II) (A) (107 SCt 3164, 97 LE2d 709) (1987) ("A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'").

[9] *Fox*, 272 Ga. at 165 (2) (punctuation and footnote omitted), *quoting Griffin*, 483 U.S. at 873 (II) (A).

[10] *Fox*, 272 Ga. at 165 (2), *quoting Griffin*, 483 U.S. at 873-74 (II) (A); *accord Hancock v. State*, 265 Ga. App. 259, 262 (6) (593 SE2d 713) (2004).

Fourth Amendment waiver detailed *supra*. Further, by accepting this special condition of probation, "and to the extent a search and seizure was not otherwise tainted without subsequent attenuation so as to compel invocation of the exclusionary rule, [Whitfield] waived his Fourth Amendment right."[11] But even under such a waiver, there must still be "some conduct reasonably suggestive of criminal activity to 'trigger' the search."[12] This trigger can be prompted by "a good-faith suspicion, arising from routine police investigative work."[13] In sum, the general rule is that

> the police can search a probationer, who is subject to such a special condition of probation, at any time, day or night, and with or without a warrant, provided there exists a reasonable or good-faith suspicion for [the] search, that is, the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass probationer).[14]

---

[11] *Reece v. State*, 257 Ga. App. 137, 140 (2) (b) (570 SE2d 424) (2002) (punctuation omitted); *accord State v. Sapp*, 214 Ga. App. 428, 431-32 (3) (448 SE2d 3) (1994).

[12] *Reece*, 257 Ga. App. at 140 (2) (b) (punctuation omitted); *accord Prince v. State*, 299 Ga. App. 164, 169 (3) (b) (682 SE2d 180) (2009).

[13] *Reece*, 257 Ga. App. at 140 (2) (b) (punctuation omitted); *accord Prince*, 299 Ga. App. at 169 (3) (b).

[14] *Reece*, 257 Ga. App. at 140 (2) (b) (punctuation omitted); *accord Brown v. State*, 307 Ga. App. 99, 106 (4) (704 SE2d 227) (2010); *Prince*, 299 Ga. App. at 169 (3) (b).

On appeal, Whitfield contends that the trial court erred by focusing on whether the officers who searched his home acted "in bad faith or in an arbitrary and capricious manner," while glossing over the requirement that the search must be based on a reasonable suspicion that he was violating his probation.[15] But to the contrary, the trial court's order merely included the relevant legal authority set forth *supra,* which defines "a reasonable or good-faith suspicion for search" as meaning that "the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass probationer),"[16] and then summarily found that Whitfield failed to show that the search was "arbitrary, capricious, or intended to harass." After setting forth the applicable precedent, the trial court expressly found that "the State *had reasonable suspicion* to suspect criminal activity or violations of probation," and it thoroughly detailed the evidence upon which it relied in making this finding.

---

[15] We note that Whitfield does not argue that his probation officer or the officers who searched his home acted in bad faith, in an arbitrary and capricious manner, or for the purpose of harassing him. And indeed, there is no evidence in the record to support such an argument.

[16] *See supra* note 14 and accompanying text.

Specifically, the trial court found that Whitfield's March 2015 drug exam was proof that he violated the terms of his probation by using an illicit substance. Although Whitfield proposed a categorical rule that a subsequent negative drug screen (such as the one he had in April 2015) "eviscerates" any reasonable suspicion of drug use based on an earlier positive drug screen, the trial court rejected that proposition, finding that "reasonable suspicion is more flexible and less exacting" than Whitfield contended.[17] Regardless, the trial court did not rely solely on

---

[17] On appeal, Whitfield relies on the "staleness doctrine" to support his argument that, while the March 2015 drug screen may have given rise to reasonable suspicion to support the search of his home, such suspicion had "gone stale" by the time of the search a month later. This argument, however, ignores that "[t]he mere passage of time will not render information stale, but rather is one of several factors to consider in the probable cause determination." *Prado v. State*, 306 Ga. App. 240, 249 (2) (a) (701 SE2d 871) (2010) (punctuation omitted). Indeed, as the Supreme Court of Georgia has explained, "[t]he proper analysis to determine timeliness is to view the totality of the circumstances for indications of the existence of reasonable probability that the conditions referred to in the sworn testimony would continue to exist at the time of the issuance of the search warrant." *Lewis v. State*, 255 Ga. 101, 104 (2) (335 SE2d 560) (1985). Here, as discussed more fully *infra*, the probation officer's sworn testimony was that, in addition to Whitfield's month-old drug screen, his suspicion that Whitfield was using drugs in violation of the terms of his probation was also based on statements that Whitfield made in April 2015, *just days* before the search. And for the reasons set forth in this opinion, the officer's testimony as a whole established a reasonable suspicion that evidence of personal drug use would be found in Whitfield's home at the time the search was executed. Finally, we note that, although the forgoing standard for considering whether evidence has become "stale" is gleaned from cases requiring probable cause and a search warrant, the level of "suspicion" necessary to justify the search in this case is "obviously less than is

Whitfield's positive drug screen in finding that the search of his residence was authorized. Indeed, the trial court also credited the probation officer's testimony that, based on his training, Whitfield's reports just days before the search that he had been self testing and counting the days since he last used drugs were "red flags" indicating that he was trying to avoid detection of his drug use. While Whitfield disagrees with the foregoing testimony, we must defer to the trial court's credibility determinations.[18] Finally, it is worth noting that "input of the probation officer before a probationary search is a factor to consider in determining whether the search was reasonable and in good faith."[19] And here, not only did the probation officer provide input to the other officers who conducted the search, he actually requested the search based on his

---

necessary for probable cause." *Blanks v. State*, 334 Ga. App. 626, 629 (1) (778 SE2d 261) (2015) (punctuation omitted).

[18] *See Curry v. State*, 309 Ga. App. 338, 341 (711 SE2d 314) (2011) ("[T]he trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous, and we must construe the evidence most favorably to the upholding of the trial court's findings and judgment.").

[19] *Brooks v. State*, 292 Ga. App. 445, 450 (2) (664 SE2d 827) (2008).

concerns—which were, in turn, based on his training—that Whitfield was using drugs and attempting to avoid detection.[20]

In sum, keeping in mind that "the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous, and we must construe the evidence most favorably to the upholding of the trial court's findings and judgment,"[21] we conclude that, under the totality of the circumstances, the trial court did not err in determining that the law-enforcement officers who searched Whitfield's

---

[20] *See Fox*, 272 Ga. at 167 (2) n.16 (noting that factors that might impact the question of the reasonableness of a search when a probationer is subject to a Fourth Amendment waiver include whether the officer conducting the search made an attempt to contact the probation officer for input on the defendant's probation, whether the probation officer was involved in the actual search, and whether the search appears to have been conducted solely for law-enforcement purposes, rather than probationary purposes.). In the case *sub judice*, the probation officer's concerns that Whitfield was using drugs and attempting to avoid detection were the sole basis for the search of Whitfield's residence. Thus, the factors identified by our Supreme Court in *Fox* support the trial court's determination that the search was reasonable because the probation officer was in contact with the officers who performed the search and the search was conducted for probationary purposes, rather than for law-enforcement purposes. *See id.*

[21] *Curry*, 309 Ga. App. at 341.

home had reasonable suspicion to suspect criminal activity or violations of probation.[22]

For all of the foregoing reasons, we affirm the trial court's denial of Whitfield's motion to suppress evidence.

*Judgment affirmed. Phipps, P. J., and Peterson, J., concur.*

---

[22] *See Hess v. State*, 296 Ga. App. 300, 302 (2) (674 SE2d 362) (2009) (holding that narcotics agents had reasonable suspicion to search the room of a defendant, who was on probation for multiple drug convictions, when they received an anonymous tip that he was engaged in unlawful possession and distribution of a controlled substance and he had failed to appear for recent drug screens); *Spencer*, 293 Ga. App. at 452 (holding that a narcotics agent acted with a reasonable and good faith suspicion of criminal activity when she searched the probationer's room after receiving two reports of drug activity, even when one of the reports was anonymous and received two months prior to the search); *Brooks*, 292 Ga. App. 450 (2) (holding that a law-enforcement officer had good faith reasonable suspicion of criminal activity to search a probationer's home when he had received two anonymous, uncorroborated tips that the probationer had drugs on his property, the probationer expressed concerns that his residence was being surveilled, and even though the probation officer was not involved in the search, the officers who searched the residence contacted the probation officer "for input on the search"); *Reece*, 257 Ga. App. at 140 (2) (b) (holding that police were not acting in bad faith or in an arbitrary and capricious manner when they had a good faith, reasonable suspicion that the probationer, who had waived his Fourth Amendment rights, was living with someone using illegal drugs and might be using them himself). *Cf. Fox*, 272 Ga. at 166-67 (2) (holding that a law-enforcement officer lacked reasonable suspicion that a probationer was engaged in criminal activity when the search was based solely on information from a tipster of unknown reliability, who provided no details by which the tip could be corroborated).