**FOURTH DIVISION
RICKMAN, C. J.,
DILLARD, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**May 31, 2023**

# In the Court of Appeals of Georgia

A23A0316. DAY v. THE STATE.

DILLARD, Presiding Judge.

Following a jury trial, Michael Day was convicted of two counts of sexual exploitation of children. On appeal, Day argues (1) the trial court erred by denying his motion to suppress certain evidence found on his computer; (2) the trial court erred by denying his motion for a mistrial; (3) the evidence was insufficient to support his conviction; and (4) his counsel was ineffective for failing to maintain "his mental illness as his defense." For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in 2012, Day was convicted of two counts of child molestation. In 2016, after Day completed his term of incarceration for those offenses, Amy Nelson—who supervises

---

[1] *See, e.g.*, *Cawthon v. State*, 350 Ga. App. 741, 741 (830 SE2d 270) (2019).

sex offenders for the Department of Community Supervision ("DCS")—was assigned to be his probation officer. Relevant here, one condition of Day's parole was that he "shall submit to a search of his . . . person, property, residence, or vehicle, at anytime day or night, with or without consent[ ] or search warrant, whenever requested by a probation officer, or any other peace officer. And specifically consent to the use of any contraband seized as evidence in any court proceeding."

In 2017, Nelson broke her wrist; and while she was on medical leave, Terrell Hurse—a surveillance officer with DCS[2]—assisted in supervising Day. On October 10, 2017, Hurse and Jesse Gibbs (the DCS assistant chief officer) went to Day's residence to perform a curfew check and a walk-through to inspect his apartment. When they entered Day's small, one bedroom apartment, Hurse and Gibbs could "pretty much see from one end to the other." And among other things, the officers noticed three "child-size" dolls that were so "life-like" Hurse thought it was "scary." Two of the dolls were in a chair wearing school uniforms, and the other was on a portable toilet undressed from the waist down. According to Gibbs, the child-like doll on the toilet—which was only dressed with a shirt—appeared to be "anatomically

---

[2] Hurse testified that a surveillance officer assists probation officers in doing compliance checks, residence checks, and curfew checks.

correct." Additionally, the dolls appeared to be like "a soft texture, maybe silicone . . ., [and] they weren't the hard shiny plastic [dolls] . . . [like] an American Girl doll or something like that."

When Gibbs asked about the dolls, Day initially said that "he was using them for some kind of public service thing . . . ." Gibbs did not understand what Day was talking about so he asked him again to explain why he had the dolls. This time, Day responded that he bought the dolls online so he could "dress[ ] them up" and resell them on eBay. At this point, the officers became concerned that Day might have child pornography on his computer, and so they called Clay Wiggins—an investigator with the Jones County Sheriff's office—because he had more experience with searching computers.

Although Wiggins acknowledged that possession of these dolls was not illegal, he was concerned because Day was on probation for child-molestation offenses. When Wiggins asked Day about his computer use, Day said he ran an e-commerce business buying and selling sex toys online. Wiggins then asked Day for permission to "look at his computer[,]"[3] and after a brief search, Wiggins discovered photographs

---

[3] It is unclear from Wiggins's trial testimony whether Day gave him permission to search the computer, but as discussed *infra*, Gibbs testified at the hearing on Day's motion to suppress that, prior to the search, Day admitted that pictures of naked

that caused him concern. As a result, he seized the computer to perform a more thorough search. And after doing so, Wiggins discovered images of child pornography on Day's computer.

Thereafter, Day was charged, via indictment, with two counts of sexual exploitation of children. Following a jury trial, Day was convicted of both charged offenses. Day then filed a motion for a new trial, which the trial court denied after a hearing on the matter. This appeal follows.

1. Day first argues the trial court erred in denying his motion to suppress the evidence found on his computer. We disagree.

In reviewing the trial court's ruling on a motion to suppress, an appellate court generally must "(1) accept a trial court's findings unless they are clearly erroneous, (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court."[4] But this Court reviews *de novo* the trial

---

children would be found on his computer.

[4] *State v. Jacobs*, 342 Ga. App. 476, 477 (804 SE2d 132) (2017) (punctuation omitted); *accord Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015).

court's "application of law to the undisputed facts."[5] With these guiding principles in mind, we turn now to this first claim of error.

Under the Fourth Amendment to the United States Constitution,[6] a search warrant may issue only upon "facts sufficient to show probable cause that a crime is being committed or has been committed . . . ."[7] And the Supreme Court of Georgia has held that "the Fourth Amendment applies to probationers."[8] Nevertheless, although searches must usually be accompanied by a warrant and supported by

---

[5] *Jacobs*, 342 Ga. App. at 477 (punctuation omitted); *see Hughes*, 296 Ga. at 750 (2) ("Although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts.").

[6] *See* U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *see also* GA. CONST. art. 1, § 1, ¶ XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the person or things to be seized.").

[7] OCGA § 17-5-21 (a); *accord Whitfield v. State*, 337 Ga. App. 167, 169 (786 SE2d 547) (2016).

[8] *Fox v. State*, 272 Ga. 163, 165 (2) (527 SE2d 847) (2000); *accord Whitfield*, 337 Ga. App. at 169.

5

probable cause to be reasonable, "exceptions have been permitted when 'special needs,' beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable."[9] Indeed, the supervision of probationers necessary to operate a probation system presents "special needs that may justify departures from the usual warrant and probable-cause requirements."[10]

As previously noted, in 2016, following his term of incarceration for two child-molestation convictions, Day agreed to certain conditions of probation, including the Fourth Amendment waiver detailed *supra*. And by accepting this special condition of probation, "and to the extent a search and seizure was not otherwise tainted without subsequent attenuation so as to compel invocation of the exclusionary rule, [Day] waived his Fourth Amendment right."[11] But even under such a waiver, there must still be "some conduct reasonably suggestive of criminal activity to 'trigger' the

---

[9] *Fox*, 272 Ga. at 165 (2) (punctuation and footnote omitted); *accord Whitfield*, 337 Ga. App. at 169-70.

[10] *Fox*, 272 Ga. at 165 (2) (punctuation and footnote omitted); *accord Whitfield*, 337 Ga. App. at 169-70.

[11] *Reece v. State*, 257 Ga. App. 137, 140 (2) (b) (570 SE2d 424) (2002) (punctuation omitted); *accord Whitfield*, 337 Ga. App. at 170.

search."[12] This trigger can be prompted by "a good-faith suspicion, arising from routine police investigative work."[13] In sum, the general rule is that

> the police can search a probationer, who is subject to such a special condition of probation, at any time, day or night, and with or without a warrant, provided there exists a reasonable or good-faith suspicion for [the] search, that is, the police must not merely be acting in bad faith or in an arbitrary and capricious manner (such as searching to harass the probationer).[14]

Turning to the instant case, prior to trial, the trial court held a hearing on Day's motion to suppress evidence gleaned from his computer, at which Gibbs, Nelson, and Hurse all testified consistently with their trial testimony, as detailed *supra*, regarding the events that resulted in the search of Day's computer. Specifically, Gibbs and Hurse both described the "child-sized" dolls they found in Day's home and Gibbs testified that, at the time, he knew Day was on probation for child-molestation

---

[12] *Reece*, 257 Ga. App. at 140 (2) (b) (punctuation omitted); *accord Whitfield*, 337 Ga. App. at 170.

[13] *Reece*, 257 Ga. App. at 140 (2) (b) (punctuation omitted); *accord Whitfield*, 337 Ga. App. at 170.

[14] *Reece*, 257 Ga. App. at 140 (2) (b) (punctuation omitted); *accord Whitfield*, 337 Ga. App. at 170. Day does not argue the officers who searched his home and computer acted in bad faith, in an arbitrary and capricious manner, or for the purpose of harassing him. And there is no evidence in the record to support such an argument.

7

offenses. Hurse also testified that the half-dressed doll sitting on the toilet "shocked" him. In addition, Gibbs testified regarding the two conflicting reasons Day gave for possessing the dolls. And given that Day admitted to using his computer to sell child-sized, anatomically correct dolls and sex toys on the internet, Gibbs suspected there would be child pornography on his computer. Finally, when the officers told Day they would be seizing his computer, Day indicated that he did not know if there was anything illegal on it. But then, when Wiggins specifically asked Day if there were pictures of naked children on the computer, Day responded that "there would be."

Nevertheless, Day argues the trial court erred in denying his motion to suppress evidence because the mere observation of the dolls in his home was insufficient by itself to establish that the officers had a good faith, reasonable suspicion that he violated the terms and conditions of his probation or of any newly discovered criminal activity.[15] But we need not address that specific question because—in

[15] Day also contends that, in determining whether they had reasonable suspicion to search his computer, the officers improperly relied, in part, on certain conditions applicable only to sex offenders, and he was not sentenced as a sex offender for his prior convictions. But at the outset of the suppression hearing, the State and Day's attorney both informed the court that Day was *not* subject to sex-offender conditions of parole. Indeed, in its written order denying Day's motion, the trial court expressly stated that "[Day] was not under any special sex offender conditions." It is unclear from the record why Day was not sentenced as a sex offender after his convictions for child molestation, but the State believed that

8

addition to the disturbing nature of the dolls and his previous convictions for child sex offenses—Day *admitted* that pictures of naked children would be found on his computer. And this Court has held that police officers had reasonable suspicion of illegal activity even when the information comes from anonymous tipsters or confidential informants.[16] So, given that Day told the officers there would be child pornography on his computer, we agree with the trial court that the officers had more than a reasonable suspicion he did possess such images.

2. Next, Day claims the trial court erred in denying his motion for a mistrial based on the State asking him about his relationship with his adult daughter. Again, we disagree.

---

someone had "dropped the ball on that." In any event, the trial court's ruling was not based on any sex-offender violations, and as explained *infra*, neither is ours.

[16] *See Brooks v. State*, 292 Ga. App. 445, 450 (2) (664 SE2d 827) (2008) (holding that two *anonymous* tips and probationer's concern that he was being watched by Cherokee Multi-Agency Narcotics Squad was sufficient to give police officers reasonable suspicion of criminal activity); *Thomas v. State*, 287 Ga. App. 163, 167 (1) (651 SE2d 116) (2007) (holding that officers had a reasonable or good faith suspicion of criminal activity when an individual told police that the probationer had given him drugs and that there were more drugs behind the probationer's residence); *State v. Cauley*, 282 Ga. App. 191, 196 (1) (638 SE2d 351) (2006) (holding that officers had reasonable grounds to believe a vehicle driven by the defendant contained drugs when they received a detailed tip from a reliable confidential informant that he had seen a black bag containing a large amount of drugs in the car).

We review a trial court's denial of a motion for mistrial for "an abuse of discretion."[17] And in doing so, we will reverse the trial court's ruling only if "a mistrial is essential to the preservation of the right to a fair trial."[18] Bearing this guiding standard of review in mind, we turn now to Day's specific claim of error.

During Day's testimony at trial, the State admitted evidence of his two prior child-molestation convictions and provided specific details about them. As to the first count, Day admitted to fondling the genitalia of his granddaughter (who was between 11 and 13 years old at the time); and as to the second count, Day admitted to penetrating her vagina with his penis. While Day testified that he did not remember or had not seen the details of the charges against him in the child-molestation case, the State showed him a police report to refresh his recollection. Additionally, copies of the indictment and sentencing sheet in that case were submitted into evidence.

Thereafter, the State asked Day if the police report refreshed his recollection as to what he told law enforcement regarding the allegations of sexual abuse his granddaughter made in that case, and he said it did not. Immediately thereafter, the State and Day had the following exchange about his adult daughter, A. M.

---

[17] *Garner v. State*, 346 Ga. App. 351, 359 (3) (816 SE2d 368) (2018).

[18] *Id.* (punctuation omitted).

10

The State: The daughter that you were concerned about, is that [A. M.]? [19]

Day: [A. M], yes . . .

The State: And you're saying that when you got out of prison, that you . . . did you have contact with [A. M.]?

Day: No.

The State: But you haven't had contact with [A. M.] in some time, have you?

Day: No . . .

The State: Why is that?

Day: She's in school . . .

The State: [Are] there any reasons why you haven't had contact with [A. M]?

Day: No . . .

The State: Okay. It wouldn't have anything to do with the allegations she made against you?

Day: That's only recently been brought up to me.

---

[19] It is unclear during this portion of Day's testimony whether the daughter at issue is the mother of the victim in the prior child-molestation case, but according to Day's brief, she is the victim's mother. Additionally, just prior to the State's questions about his relationship with his daughter, Day did not testify that he was concerned about her, so it is also unclear what concern from Day's earlier testimony the State was referencing. Questions about Day's daughter appear to be an abrupt change of subject after he testified regarding the police report not refreshing his recollection regarding his *granddaughter's* allegations of sexual abuse.

At this point, Day's counsel—outside of the jury's presence—moved for a mistrial, arguing that the question about "the accusation [his daughter] made against [him]" was improper character evidence. Following arguments from the parties, the trial court found that the situation did not warrant a mistrial. Day's counsel then requested that the trial court give a curative instruction for the jury to disregard the testimony at issue. The court asked the parties if it would be sufficient for it to instruct the jury to disregard any testimony regarding why Day did not have a relationship with his daughter. And while Day's counsel "strongly believe[d] . . . that a mistrial [was] warranted[,]" he agreed with the trial court and the State that the proposed curative instruction would be "sufficient[.]" Nevertheless, Day's counsel expressed doubt as to whether the curative instruction would "increase [the] danger, or produce it." Eventually, the trial court asked Day's counsel if he wanted it to give the curative instruction, and counsel responded, "Yes, please." When the jury returned to the courtroom, the trial court instructed the jury that it should "disregard any question[s] or testimony[ ] regarding why he, being the [d]efendant, did not have a relationship with [A. M.]."

Now, Day argues that allowing the State to "allude[ ]" to "allegations that [A. M.] had made against him in the investigation for the child[-]molestation case

12

involving his granddaughter" introduced improper character evidence. Specifically, Day contends that, in the prior case, A. M. alleged he molested her when she was a child.

In this regard, under OCGA § 24-4-404 (b),

evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial . . . .

Here, while the State made a reference to "allegations" Day's daughter may have made about him, there were no questions or any testimony as to the substance of those allegations, much less that they involved sexual abuse or when they occurred. Indeed, Day provides no record support for his claim that A. M. ever alleged he molested her as a child. In fact, Day provides no citations to evidence in

13

the record to support this claim of error. And suffice it to say, the burden is on the party alleging error to "show it affirmatively in the record."[20]

Moreover, to the extent the questions about Day's daughter were even improper, the trial court gave a prompt curative instruction to the jury that it should disregard them. And such instructions help remedy the admission of improper character evidence even when—unlike the unspecified and vague allegations in this case—such evidence relates to prior *convictions*.[21] Finally, any improper admission

---

[20] *Bennett v. Quick*, 305 Ga. App. 415, 416 (699 SE2d 539) (2010); *see Wilson v. Mallard Creek Holdings*, 238 Ga. App. 746, 747 (519 SE2d 925) (1999) ("It is not the function of appellate judges to engage in the insipid search for support of alleged error without citation to relevant parts of the record." (punctuation omitted)). The testimony and questioning detailed *supra* regarding A. M. is quoted because it occurred immediately prior to and is related to the motion for a mistrial, not because *Day* provided any citations to the record identifying the alleged improper line of questioning.

[21] *See Lewis v. State*, 314 Ga. 654, 667 (4) (b) (878 SE2d 467) (2022) ("[I]t is well established that a trial court can negate the potentially harmful effect of improperly introduced evidence by prompt curative instructions rather than by granting a mistrial" (punctuation omitted)); *Dukes v. State*, 273 Ga. 890, 892 (3) (b) (548 SE2d 328) (2001) ("When a witness improperly testifies about a defendant's prior convictions, thereby placing the defendant's character in evidence, curative instructions given by the trial court may be a proper and adequate remedy."); *Sims v. State*, 268 Ga. 381, 382 (2) (489 SE2d 809) (1997) ("We have previously held that curative instructions were an adequate remedy when witnesses improperly placed the defendant's character into evidence by testifying about his prior convictions or criminal acts.").

14

of the questions and testimony at issue was harmless because the evidence that there was child pornography on Day's computer was overwhelming and essentially undisputed.[22] Under these circumstances, Day has not established the trial court committed reversible by error by denying his motion for a mistrial.

3. Next, Day summarily contends the evidence was insufficient to support his convictions, but he has abandoned this argument.

In listing his enumerations of error, Day asserts the evidence was insufficient to support his convictions, but he merely sets forth the applicable standard of review without any substantive discussion. In fact, Day does not mention any of the evidence in this case, much less apply any applicable legal authority to such evidence.[23] Under

---

[22] *See Walker v. State*, 282 Ga. 703, 706 (3) (653 SE2d 468) (2007) ("[T]he admission of evidence suggestive of [co-defendant's] bad character, even if found to have been improper, was harmless in light of the overwhelming evidence of [defendant's] guilt."); *Smallwood v. State*, 334 Ga. App. 224, 228 (2) (779 SE2d 1) (2015) (concluding "the trial court did not abuse its discretion in denying [defendant's] motion for mistrial because the witness's comment was nonresponsive, brief, and the trial court provided curative instructions, and because the evidence against [him] was overwhelming").

[23] Similarly, at the motion for a new trial hearing, when challenging the sufficiency of the evidence to support Day's convictions, his counsel simply referred to this as a "boilerplate enumeration" without any discussion specific to this case.

these circumstances, Day has abandoned this claim of error.[24] And even if he had not done so, the evidence against him was overwhelming.

4. Finally, Day maintains that he received ineffective assistance of counsel because his counsel failed to pursue a "mental health defense." This claim likewise lacks merit.

In evaluating Day's claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[25] which requires him to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for

---

[24] *See Davenport v. State*, 309 Ga. 385, 397-99 (4) (b) (846 SE2d 83) (2020) (providing numerous "good reasons" to abandon the Supreme Court's practice of reviewing the sufficiency of the evidence to support all murder convictions (except for death penalty cases) when that issue was "un-briefed and un-argued" on appeal); *Robinson v. Robinson*, 239 Ga. 323, 324 (1) (236 SE2d 660) (1977) (deeming argument abandoned for purposes of appeal when it was not supported by argument or citation of authority as required by rules); *Flowers v. State*, 269 Ga. App. 443, 445 (1) (604 SE2d 285) (2004) ("As we have explained, legal analysis is, at a minimum, a discussion of the appropriate law as applied to the relevant facts." (punctuation omitted)); *see also* CT. APP. R. 25 (d) (1) (i) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

[25] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

16

counsel's errors, the outcome of the trial would have been different."[26] Importantly, should a defendant "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[27] Moreover, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[28] With these guiding principles in mind, we turn now to Day's specific claim of error in this regard.

As an initial matter, Day presented no evidence or testimony, including that of his trial counsel, at the hearing on his motion for a new trial. Instead, his post-trial counsel and the State offered only oral arguments to the court. And as we have previously explained, to prevail on a claim of ineffective assistance of counsel, a

---

[26] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[27] *Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017); *accord Lawson v. State*, 365 Ga. App. 87, 95 (3) (877 SE2d 616) (2022).

[28] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

17

"criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct."[29] And importantly, when trial counsel does not testify at the motion for new trial hearing, the defendant has "an extremely difficult task to overcome the presumption."[30] Here, Day has not done so.

Day contends his trial counsel was ineffective for failing to pursue what he characterizes as a "mental[-]illness" defense, but he concedes that his counsel *did* request a "competency and criminal responsibility evaluation" prior to trial, and the evaluation was performed by Department of Behavioral Health and Development Disabilities. In this regard, Day complains his trial counsel erred by failing to secure a second, independent evaluation of his mental illness, which he claims is post traumatic stress disorder ("PTSD") resulting from trauma he suffered while serving in the military. But in making these allegations, he provides no statutory or case

---

[29] *Chapman*, 273 Ga. at 350 (2); *see Anderson v. State*, 274 Ga. 871, 873 (4) (560 SE2d 659) (2002) ("[T]here is a strong presumption that a trial attorney's performance falls within a wide range of reasonable professional assistance." (punctuation omittedz)); *Bufford v. State,* 320 Ga. App. 123, 125 (3) (739 SE2d 421) (2013) (same).

[30] *Bufford*, 320 Ga. App. at 125 (3) (punctuation omitted)); *accord Anderson*, 274 Ga. at 873 (4).

authority law defining a "mental-illness defense" as applied to this case and what it entails.[31] Further, because Day failed to present any evidence or testimony at the motion-for-new-trial hearing, there is no evidence in the record regarding his alleged PTSD or how it might have aided his defense. Indeed, in addressing the deficiency prong of the *Strickland* test, he merely provides his version of the facts and bare allegations without citations to any record evidence. As a result, Day has abandoned his contention that his counsel was deficient for failing to request an independent evaluation of his mental health.[32]

---

[31]At one point in his brief, Day summarily contends that trial counsel was ineffective for withdrawing his initial plea of not guilty by reason of insanity, but he does not provide the legal definition of that defense or discuss how it applies to this case. And Day gives no explanation for why he believes his alleged PTSD contributed to his possession of *child pornography* to such an extent it would support an insanity defense. So, he has also abandoned any claim that his counsel was ineffective for withdrawing his initial plea. *See supra* note 24 & accompanying text.

[32] *See Farmer v. Dep't of Corr*., 346 Ga. App. 387, 394 (2) (816 SE2d 376) (2018) ("[M]ere conclusory statements are not the type of meaningful argument contemplated by our rules." (punctuation omitted)); *supra* notes 20, 24 & accompanying text.

Although we need not address both prongs of the *Strickland* test,[33] Day's contention that the outcome of his trial would likely have been different if his counsel had secured an independent mental-health evaluation *and* it was granted by the court, is purely speculative. Day does not discuss or cite to any evidence presented at either the trial or the motion-for-new-trial hearing to support his summary contention that he was prejudiced by not having such an evaluation.[34] And needless to say,

---

[33] *See Gomez*, 300 Ga. at 573 (explaining that should a defendant "fail to meet his burden on one prong of [*Stricklands*] two-prong test, we need not review the other prong").

[34] Instead of citing to or discussing any evidence or testimony presented in *this case*, Day discusses the Supreme Court of Georgia's decision in *Scott v. State*, 301 Ga. 573 (802 SE2d 211) (2017) and summarily contends it is analogous to the instant case. But setting aside that Day failed to satisfy his burden of showing ineffective assistance regardless of the holding in *Scott*, his reliance on that case is misplaced. In *Scott*, our Supreme Court found the defendant's counsel was deficient for choosing to forego a mental-health examination when counsel knew that his mental illness was *related* to the violent offense he committed. *Id.* at 578 (2) (a). Nevertheless, the *Scott* Court determined the defendant did not suffer prejudice as defined by *Strickland* because a mental-health defense under the circumstances of the case would have been a "hard sell." *Id.* at 579-80 (2) (b). Here, there was *no evidence* Day's alleged PTSD related to his possession of child pornography. Further, as in *Scott*, Day failed to show a defense regarding his alleged PTSD would likely have been effective.

20

speculative allegations are insufficient to support a claim for ineffective assistance of counsel.[35]

For all these reasons, we affirm Day's convictions.

*Judgment affirmed. Rickman, C. J., and Pipkin J., concur.*

---

[35] *See Johnson v. State*, 310 Ga. 685, 692 (3) (853 SE2d 635) (2021) (holding that when defendant offered pure speculation without any evidentiary support, he could not establish his counsel's failure to object to certain evidence was prejudicial under *Strickland*); *Baker v. State*, 293 Ga. 811, 815 (750 SE2d 137) (2013) ("To show *Strickland* prejudice, appellant was required to offer more than mere speculation that, absent the counsel's alleged errors, a different result probably would have occurred at trial." (citation and punctuation omitted)).