**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**April 30, 2026**

# In the Court of Appeals of Georgia

A26A0516. BALL v. THE STATE.

DILLARD, Presiding Judge.

Following a jury trial, Edward Ball appeals numerous drug and firearm convictions, challenging the trial court's denial of his pretrial motion to suppress evidence seized from his home. More precisely, Ball argues the trial court erred in denying his motion to suppress because (1) it improperly considered evidence outside the four corners of the search-warrant affidavit; (2) the search warrant was overly broad and lacked particularity as to the items to be searched for and seized; and (3) the search-warrant affidavit did not suggest there were drugs in the location searched. For the following reasons, we affirm.

Viewed in the light most favorable to the trial court's ruling,[1] the record shows[2] that in 2019, William Nelson worked for the Cherokee County Sheriff's Office and was an agent assigned to the Cherokee Multi-Agency Narcotics Squad ("CMANS"). The "purpose and goal" of CMANS was to "get dealers and suppliers of drugs off the streets." To this end, Nelson observed "numerous" drug transactions, sometimes with the help of confidential informants. Specifically, he observed "hand-to-hand" transactions at places like "cars, hotels, [and] houses ... ."

---

[1] See, e.g., *State v. Dykes*, 345 Ga. App. 721, 721 (815 SE2d 106) (2018).

[2] In reciting the relevant facts, Ball does not provide record citations to support a majority of his factual allegations; and in the argument section of his brief, he provides only two record citations—"Exhibit 52" generally (i.e., the search warrant and four-page supporting affidavit) and a single page of the trial transcript. In the absence of proper and sufficient citations to the record, this Court will not "cull the record in search of evidence to support the contentions of parties." *Davis v. VCP S., LLC*, 321 Ga. App. 503, 506 (2013) (quotation marks omitted). As a result, we glean the factual background from the trial court's order, the search-warrant affidavit, and the suppression-hearing transcript. Indeed, when the alleged error "is shown only the appellant's brief and not by the record, we must assume that the trial court's rulings were correct." *Austell Healthcare v. Scott*, 308 Ga. App. 393, 395(1) (707 SE2d 599) (2011) (citation and quotation marks omitted). And while we believe our independent review of the record identified the evidence necessary to decide this appeal, we caution that "if we have missed something in the record or misconstrued an argument, the responsibility rests with [appellant's] counsel." *Cawthon v. State*, 350 Ga. App. 741, 743 (830 SE2d 270) (2019) (quotation marks omitted).

In April 2019, CMANS received a tip that Reginald Foster and another individual were selling methamphetamine and heroin in Cherokee County. During an investigation, undercover agents worked with a confidential informant to set up an organized buy of 3.5 grams of methamphetamine from Foster on May 10, 2019.[3] Foster requested that the undercover agent pick him up at his home address and then take him to his supplier. After the agent picked Foster up, they drove to the pool area at the King's Gate subdivision, where Foster met a black male in a white Honda Civic. Foster then returned to the agent's car with the requested 3.5 grams of methamphetamine, as well as .3 grams of heroin.

Later on, CMANS agents conducted surveillance of the King's Gate subdivision to locate the white Civic. The vehicle was "quickly" found at 300 Wauchula Way—a residence approximately 100 feet from the subdivision's pool area. A black Mercedes—which was registered to Ball at that address—was also found at the house. After observing Ball's driver's license photo, agents determined that he

---

[3] Although Agent Nelson was the "case agent" for the investigation into Ball and the sole witness at the suppression hearing, he was not the undercover agent who participated in the controlled buys from Foster, which are detailed below. It appears the undercover agent purchasing drugs from Foster was Agent Justin Carder; but during the hearing, Agent Nelson often referred to the undercover agent at issue without naming Agent Carder.

was the individual who provided the drugs to Foster during the controlled buy on May 10, 2019. Law enforcement also learned that Ball lived at the Wauchula Way residence with a few other people.

The undercover agents then set up a second controlled buy for May 17, 2019. And once again, Foster requested that the same agent pick him up at his home and take him to the King's Gate subdivision's pool area to meet his supplier. But this time, CMANS agents also monitored several areas of the neighborhood and observed Ball exit the Wauchula Way residence, enter his black Mercedes, and drive to the pool area. After the agent and Foster arrived, Foster pointed to the black Mercedes and told the agent that the individual in the car was his supplier. One of the agents surveilling the area identified Ball as the driver and sole occupant of the car. Foster exited the vehicle, entered the Mercedes, and a short time later, he returned with a half ounce of methamphetamine and .3 grams of heroin. Agents then observed Ball drive back to and enter the Wauchula Way residence. Ultimately, the undercover agent confirmed that Ball was Foster's supplier because the agent heard Foster's side of the conversation when he called Ball to buy drugs.

Undercover CMANS agents continued surveillance of Ball's residence, the pool area of his subdivision, and both the Honda Civic and Mercedes. During this time, on a few occasions, agents observed both vehicles leave Ball's residence and drive to the subdivision's pool area, where the drivers would meet with unidentified individuals for a short amount of time and immediately return to the Wauchula Way home. On one of those occasions in June 2019, agents performed a traffic stop of a Buick after the driver had a brief interaction inside the white Civic and found the driver in possession of .4 grams of heroin.

As they continued their investigation, CMANS agents learned that Ball had been arrested on June 26, 2019, for trafficking methamphetamine and was being held in the Fulton County jail. The next day, Agent Nelson obtained a search warrant for the 300 Wauchula Way residence, and along with other agents, executed it the same day. During the search, CMANS agents discovered "trafficking amounts" of heroin and methamphetamine, as well as Ball's belongings. In fact, the search of Ball's home was the "largest heroin bust in Cherokee County to date[,]" and later, agents determined that some of the heroin had been mixed with fentanyl. Agents also found three firearms, cash, and drugs "packaged for sale."

Ball was later charged, via indictment, with numerous drug and firearm offenses. He moved to suppress the evidence found in his residence.[4] After a hearing, the trial court denied his motion. Although Ball was represented by counsel at the hearing on his motion to suppress, he elected to represent himself at the jury trial. Ultimately, Ball was convicted of eight charged offenses. This appeal—in which Ball is represented by post-conviction counsel—follows.

When the facts material to a motion to suppress are disputed, it is generally for the trial judge to "resolve those disputes and determine the material facts."[5] In this regard, our Supreme Court has "identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in

---

[4] In total, Ball filed three motions to suppress evidence; but relevant here, he sought to suppress the evidence found in the search of his home. Specifically, his first motion merely requested a hearing. The second motion contended the evidence should be suppressed because statements in the search-warrant affidavit were false. And in his third, two-page motion, Ball listed several conclusory allegations as to why the warrant was invalid. For ease of reference, we address his motions collectively as a single motion to suppress evidence.

[5] *Hughes v. State*, 296 Ga. 744, 746(1) (770 SE2d 636) (2015). Accord *State v. Brogan*, 340 Ga. App. 232, 234 (797 SE2d 149) (2017).

which the trial court has made express findings of disputed facts."[6] Specifically, an appellate court must construe the evidentiary record "in the light most favorable to the trial court's factual findings and judgment[,] … accept the trial court's factual findings unless they are clearly erroneous, … and … limit its consideration of the disputed facts to those expressly found by the trial court."[7] Finally, although we owe "substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts."[8] With these guiding principles in mind, we turn now to Ball's specific claims of error.

1. Ball first argues the trial court erred in improperly considering evidence outside the four corners of the search-warrant affidavit in concluding there was probable cause to authorize the search of his home. We disagree.

---

[6] *Serdula v. State*, 356 Ga. App. 94, 107(3) (845 SE2d 362) (2020). Accord *Hughes*, 296 Ga. at 746(1).

[7] *Westbrook v. State*, 308 Ga. 92, 96(2) (839 SE2d 620) (2020) (quotation marks and citations omitted). Accord *Serdula*, 356 Ga. App. at 107(3).

[8] *Hughes*, 296 Ga. at 750(2). Accord *Serdula*, 356 Ga. App. at 107(3).

Under the Fourth Amendment to the United States Constitution (as well as its equivalent provision in the Georgia Constitution),[9] a search warrant "may issue only upon facts sufficient to show probable cause that a crime is being committed or has been committed."[10] And when the judge who issues a warrant determines whether probable cause exists, they must

> make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [them], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.[11]

---

[9] See U.S. CONST. amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."). See also GA. CONST. Art. 1, Sec. 1, Par. XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized.").

[10] *State v. Yearwood-Cabbel*, 370 Ga. App. 471, 476(1) (897 SE2d 876) (2024) (footnote and quotation marks omitted). Accord *Whitfield v. State*, 337 Ga. App. 167, 169 (786 SE2d 547) (2016); *State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009).

[11] *Bibbs v. State*, 375 Ga. App. 308, 313–14(2)(a) (915 SE2d 918) (2025). Accord *Taylor v. State*, 303 Ga. 57, 60(2) (810 SE2d 113) (2018). See, e.g., *Pugh v. State*, 318 Ga. 706, 714(2)(a) (899 SE2d 653) (2024) ("Considering the totality of the circumstances outlined in the affidavit, the magistrate was authorized to make certain common-sense conclusions about human behavior, and infer that [defendant] was

Our duty, then, is to review the issuing judge's decision and "determine whether there was a 'substantial basis' for concluding that probable cause existed to issue the search warrant."[12] And as a reviewing court, we must give "substantial deference to the finding of probable cause."[13] Moreover, the test for probable cause is "not a hypertechnical one to be employed by legal technicians, but is based on the factual and practical considerations of everyday life on which reasonable and prudent men act."[14] So, in making this determination, the judge "may draw reasonable inferences from the

somehow involved in [victim's] murder, that evidence of his location and communications in the time surrounding the murder might be found in his cell phone records, and that the target phone number belonged to [defendant]." (citation and quotation marks omitted)).

[12] *Bibbs*, 375 Ga. App. at 314(2)(a) (quotation marks omitted). Accord *Taylor*, 303 Ga. at 60(2).

[13] *Bibbs*, 375 Ga. App. at 314(2)(a) (quotation marks omitted). See *Taylor*, 303 Ga. at 60(2) ("A magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court." (quotation marks omitted)).

[14] *Bibbs*, 375 Ga. App. at 314(2)(a) (quotation marks omitted). Accord *Taylor*, 303 Ga. at 60–61(2).

material supplied by applicants for a warrant."[15] Significantly, even doubtful cases should "be resolved in favor of upholding a warrant."[16]

Here, Ball argues the trial court erred in improperly considering evidence outside the four corners of the search-warrant affidavit in concluding there was probable cause to search his home.[17] In the search warrant, the magistrate noted that oral testimony was not "considered[,] received[,] or recorded." And when a magistrate's finding of probable cause is based solely on an officer's affidavit, we "focus on the information set forth within the four corners of the affidavit."[18] Indeed, when the magistrate "only considered the evidence in the warrant applications in

---

[15] *Bibbs*, 375 Ga. App. at 314(2)(a) (quotation marks omitted). Accord *Taylor*, 303 Ga. at 61(2).

[16] *Bibbs*, 375 Ga. App. at 314(2)(a) (quotation marks omitted). Accord *Taylor*, 303 Ga. at 61(2).

[17] Ball provides no record citations to support his *numerous* factual allegations related to this claim of error—not even to the search warrant, the supporting affidavit, or to the specific evidence he contends the trial court improperly considered. We reiterate that this Court will not "cull the record in search of evidence to support the contentions of parties." *Davis*, 321 Ga. App. at 506 (quotation marks omitted).

[18] *State v. Haynes*, 373 Ga. App. 154, 155(1) (907 SE2d 222) (2024) (quotation marks omitted). Accord *Coleman v. State*, 337 Ga. App. 304, 306(1) (787 SE2d 274) (2016).

issuing the search warrants, our analysis is confined to the four corners of those documents."[19]

Ball alleges that several critical facts "connecting [his residence] to the drug deals were cited in the [trial court's] order [that] are nowhere in the affidavit." And then—without citing to the record—Ball lists factual statements he contends were not contained in the search-warrant affidavit but were mentioned in the trial court's order. This claim is belied by the record. For example, Ball notes that none of the drug deals took place at his home, and he was never seen taking drugs in or out of the house; but the court's order never mentions that drug deals took place inside his home or that he was seen taking drugs. Instead, the court merely noted that the magistrate court had evidence that Ball was "supplying drugs *out* of his home."[20] Ball also contends that, in the affidavit, there was "no recitation of 'training and experience' establishing that persons involved in these types of hand[-]to[-]hand drug deals might keep quantities of drugs in their homes." But in the search-warrant affidavit, Agent Nelson detailed his extensive experience in drug-related investigations, including his time working

---

[19] *Landers v. State*, 355 Ga. App. 69, 72 (842 SE2d 525) (2020) (quotation marks omitted). Accord *State v. Perez*, 349 Ga. App. 707, 709 (824 SE 2d 804) (2019).

[20] (Emphasis added).

with the Cherokee County narcotics squad; and he averred that, in his view, there was probable cause to show there were illegal drugs inside Ball's residence.[21]

Simply put, Ball has identified no factual statements in the trial court's order denying his motion to suppress that are materially different from the facts Agent Nelson included in the search-warrant affidavit. And importantly, harm as well as error "must be established by an appellant in order to secure a reversal of his conviction."[22] In sum, given our significant deference to the trial court's probable-cause determination (which should be upheld even in doubtful cases),[23] Ball has not established that the trial court improperly considered evidence outside the four

---

[21] The trial court's order included a single sentence regarding Agent Nelson's experience, noting Nelson stated that, in his experience, Ball's behavior was indicative of the distribution of illegal drugs. We are unconvinced this statement is materially different from the information included in his affidavit.

[22] *Newsome v. State*, 287 Ga. App. 356, 358 (651 SE2d 764) (2007). See *Madison v. State*, 281 Ga. 640, 642(2)(b) (641 SE2d 789) (2007) ("[H]arm as well as error must be shown to authorize a reversal by this [C]ourt. When a plaintiff in error brings a case here, he must show error which has hurt him. This [C]ourt is not an expounder of theoretical law, but it administers practical law, and corrects only such errors as have practically wronged the complaining party." (quotation marks omitted)).

[23] See supra note 16 & accompanying text.

corners of the search-warrant affidavit. And even if we assume the trial court did so, Ball cannot show that he was harmed.

2. Ball next argues the trial court erred in denying his motion to suppress evidence because the search warrant was overly broad and lacked particularity as to the items to be searched and seized. Again, we disagree.

Ball filed several motions to suppress evidence obtained from his home; and in one of them, he included a *single* conclusory sentence that the search warrant lacked particularity. Ball never claimed—either in writing or at the suppression hearing—that the search warrant was overly broad. And Ball made no further mention of these allegations before or during trial, much less provide a legal argument to support them.

As we have explained, a constitutional challenge "may not be raised for the first time in a motion for new trial."[24] Indeed, in challenging a trial court's denial of a motion to suppress, a defendant "may not argue on appeal grounds that he did not argue (and obtain a ruling on) below."[25] Still, even when a defendant does not move

---

[24] *Maxwell v. State*, 367 Ga. App. 302, 306(1) (885 SE2d 39) (2023) (quotation marks omitted).

[25] *Maxwell*, 367 Ga. App. at 306(1) (quotation marks omitted). In its order denying Ball's motion for a new trial, the trial court only addressed what it considered to be the "crux" of his argument, which was that law enforcement lacked probable

to suppress the search warrant "based on particularity [or overbreadth], [the] claim must be reviewed on appeal under the plain-error standard."[26] And as our Supreme Court has explained, there are four prongs to consider when applying plain-error analysis:

> First, there must be an error or defect—some sort of a deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[27]

cause to seek a search warrant for his home.

[26] *Williams v. State*, 315 Ga. 490, 494(2) (883 SE2d 733) (2023). See *Goins v. State*, 310 Ga. 199, 204(4) (850 SE2d 68) (2020) (reviewing the admissibility of evidence obtained during a search of a cell phone for plain error when trial counsel failed to obtain a ruling on a motion to suppress or object when the evidence was admitted during the trial).

[27] *State v. Kelly*, 290 Ga. 29, 32(2)(a) (718 SE2d 232) (2011) (quoting *Puckett v. United States*, 556 U.S. 129(II)(a) (29 SCt 1423, 173 LE2d 266) (2009)). See *Roundtree v. State*, 358 Ga. App. 140, 145–46(2) (854 SE2d 340) (2021) ("[R]eversal based on

Turning to this case, Ball argues the trial court erred in denying his motion to suppress because the language in the search warrant was overly broad. In this respect, our Supreme Court has explained that "a warrant suffering from overbreadth describes in both specific and inclusive generic terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause."[28] So, even *if* the search warrant were overly broad (which we doubt), Ball must still show he was harmed by it.[29] And here, Ball has not identified any specific items seized as a result of the allegedly overly broad nature of the search warrant. Instead, he appears to

plain error is authorized only if the instruction was erroneous, the error was obvious, the [error] likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings."(quotation marks omitted)).

[28] *Pugh*, 318 Ga. at 718(2)(c). See *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F3d 137, 149(IV)(A) (3d Cir. 2002) ("An overly broad warrant describes in both specific and inclusive generic terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause." (quotation marks and brackets omitted)).

[29] See *Serdula*, 356 Ga. App. at 113(3)(b) n.77 (holding that even if a search warrant is overly broad, a defendant must still show he was harmed by it); *Johnson v. State*, 320 Ga. App. 231, 235(3) (739 SE2d 718) (2013) ("[E]ven if the warrant could be so construed as authorizing an overly broad seizure, [the defendant] has failed to show that any such broader seizure occurred and thus has failed to show any harm."). See also *West v. State*, 300 Ga. App. 583, 584–85(1) (685 SE2d 486) (2009) ("In order to constitute reversible error, there must be harm as well as error.").

primarily take issue, generally, with the warrant authorizing the search and seizure of financial records and cell-phone data. Setting aside that the warrant *limited* seizure of those items only to the extent they concerned "the secreting of drug proceeds and/or drug transactions[,]" Ball has not identified any incriminating evidence gleaned from a search of his cell phone's data or financial records. As a result, he has not shown any harm by the potential overbreadth of the search warrant, which is required under plain-error review.[30]

Even so, Ball also maintains the search warrant was unconstitutional because it lacked sufficient particularity. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

---

[30] See *Pugh*, 318 Ga. at 719(2)(c) ("Assuming without deciding that [the defendant] is correct that the warrant was overbroad in the respects he contends, his claim nonetheless fails on the third prong of plain error review because he has not shown harm from the inclusion of the allegedly overbroad portions of the warrant."); *Bibbs*, 375 Ga. App. at 318(2)(b) (upholding the trial court's denial of defendant's motion to suppress evidence when, even assuming the search warrant was overly broad, there was no evidence that an improperly broad search occurred); *State v. Santiago*, 371 Ga. App. 720, 726(c) (902 SE2d 715) (2024) ("There is nothing to indicate that a broader seizure in fact occurred in this case and thus nothing to indicate any harm. Indeed, where a search as it was actually conducted is lawful, it is not rendered invalid merely because the warrant pursuant to which it was made was overbroad." (quotation marks omitted)).

particularly describing the place to be searched, and the . . . things to be seized."[31] In this respect, we have explained that "although a warrant cannot leave the determination of what articles fall within its description and are to be seized entirely to the judgment and opinion of the officer executing the warrant, the degree of specificity in the description is flexible and will vary with the circumstances involved."[32] And the "particularity requirement" only demands that "the executing officer be able to identify the property sought with reasonable certainty."[33] Simply put, in addition to "requiring that officers have enough guidance to locate and seize only those items the warrant authorizes them to seize, this particularity requirement also prevents general searches—that general, *exploratory rummaging in a person's belongings*

---

[31] *Bibbs*, 375 Ga. App. at 316(2)(b). Accord U.S. Const. Amend. IV. See also Ga. Const. Art. I, § I, ¶ XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized.").

[32] *Bibbs*, 375 Ga. App. at 316–17(2)(b). Accord *Serdula*, 356 Ga. App. at 111(3)(b).

[33] *Bibbs*, 375 Ga. App. at 317(2)(b) (quotation marks omitted). Accord *Serdula*, 356 Ga. App. at 111–12(3)(b).

17

by the government that has been rejected since the founding as a violation of fundamental rights."[34]

Here, contrary to Ball's assertions, the search warrant was extremely detailed as to the items to be searched and potentially seized in his home, all of which related to what appeared to be his participation in drug trafficking. Indeed, the search warrant specified the following items to be searched and seized:

> Controlled substances, specifically heroin, methamphetamine and any other controlled substances, weapons, U.S. currency, receipts of sale, packaging materials, scales and materials used in the manufacturing, cultivation[,] and distribution of illegal drugs. As well as financial documents, bank records, investment records, checking and savings account records, receipts of purchases and other financial documents, as well as cell phones and cell phone records, text and voice mail messages *pertaining to secreting of drug proceeds and/or drug transactions.*[35]

---

[34] *State v. Wilson*, 315 Ga. 613, 614 (884 SE2d 298) (2023) (citation and quotation marks omitted) (emphasis added). Accord *State v. Black*, 370 Ga. App. 18, 24(2) (893 SE2d 517) (2023).

[35] (Emphasis added). See *Civil v. State*, 375 Ga. App. 31, 34–35(1) (912 SE2d 709) (2025) (holding that a search warrant satisfied the particularity requirement when it sought electronic data but concluded by stating that officers were limited to searching for evidence that the particular crime at issue had been or was being committed). Cf. *Wilson*, 315 Ga. at 615 (holding that a search warrant did not satisfy the particularity requirement when it "broadly authorize[d] the seizure of any and all stored electronic information on the phones, including but not limited to various kinds

In a single paragraph, Ball claims the warrant failed to satisfy the particularity requirement because there was no limiting language in the search warrant. But as shown above, the warrant expressly provided that the items to be searched and seized must relate to the suspected crimes at issue—secreting of drug proceeds and drug transactions. Other than this bare, inaccurate allegation, Ball fails to present any cogent legal argument that the search warrant was unconstitutional based on a lack of particularity. As a result, Ball has abandoned any argument that the search warrant lacked sufficient particularity.[36]

3. Lastly, Ball argues the trial court erred in finding there was probable cause to support the issuance of the search warrant when the accompanying affidavit did not suggest drugs would be found in his home. This claim is likewise without merit.

---

of electronic information" (quotation marks omitted)).

[36] See *Gunn v. State*, 342 Ga. App. 615, 623–24(3) (804 SE2d 118) (2017) (explaining that "mere conclusory statements are not the type of meaningful argument contemplated by our rules" (quotation marks omitted); *Brittain v. State*, 329 Ga. App. 689, 704(4)(a) (766 SE2d 106) (2014) (explaining that an appellant must support enumerations of error with argument and citation of authority, and "mere conclusory statements are not the type of meaningful argument contemplated by our rules" (quotation marks omitted)).

In support of this argument, Ball attempts to distinguish this case from several others in which this Court found there was probable cause to support a search of a residence based on "trash pulls" at or near the residence in which law enforcement found evidence that drugs would be located inside. But Ball provides no legal authority suggesting that evidence *other* than trash pulls can never provide probable cause to support a search of a residence. As detailed above, Agent Nelson stated that two cars—one of which was registered to Ball at the residence searched—drove to and from his home and the pool area of the subdivision, where Foster and others purchased drugs from the cars' occupants. Ball was identified as Foster's dealer, and those transactions occurred regularly. So, we reject Ball's implicit suggestion that the search warrant lacked probable cause merely because it was not based on evidence obtained from trash near his residence.

And while Ball argues there was no probable cause to search his home because the agents never observed drugs coming in or out of his home, the magistrate judge was permitted to make "a practical, common-sense decision . . . , given all the circumstances . . . , [that] there [was] a fair probability that contraband or evidence of

a crime [would] be found in [his home].[37] So, because Ball left his home immediately before each drug transaction took place at the pool area inside of his car and then immediately returned home, we are persuaded the circumstances suggest there was a fair probability drugs would be found in the residence.

For all these reasons, we affirm the trial court's denial of Ball's motion to suppress evidence.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*

---

[37] *Bibbs*, 375 Ga. App. at 314(2)(a).